[S. F. No. 5.   Department Two.—July 23, 1896.]

F. O. DOWNING, APPELLANT, v. M. W. MURRAY
ET AL., RESPONDENTS.

SALE OF MINING CLAIMS—ACCOUNTING AND COMPROMISE BETWEEN CO-
    OWNERS—ACTION TO ANNUL SETTLEMENT — NONSUIT.—Where several
    mining claims and parts of claims were sold together, and a dispute
    arose as to the respective interests of the co-owners of the claims, and
    as to the disposition to be made of the proceeds of the sale, and also as
    to items of expense incurred, which disputes were finally settled and
    adjusted, and the money distributed, upon a full accounting had, and
    compromise made, between them, with full knowledge of all the facts,
    such settlement cannot be set aside at the will of either party, but only
    upon a showing of fraud, mistake, or undue influence, and, where no
    such showing is made, the plaintiff, in an action to set aside the settle-
    ment and to open up the account, is properly nonsuited.
ID.—WHEN NONSUIT SHOULD BE GRANTED—APPEAL—PRESUMPTION—DIS-
    CRETION.—The judge presiding at a trial by jury should grant a nonsuit
    where a verdict in favor of plaintiff should be set aside for want of evi-
    dence to support it, and, in the absence of a jury, where the evidence is
    insufficient to support a judgment for the plaintiff, and where a nonsuit
    is granted, it is to be presumed that the judge acted on this principle,
    and his action will not be disturbed on appeal where there is no reason
    for holding that he abused his discretion in concluding that the evidence
    was insufficient.

APPEAL from a judgment of the Superior Court of
the City and County of San Francisco and from an
order denying a new trial.   J. C. B. HEBBARD, Judge.

The facts are stated in the opinion of the court.

*Lewis & Keenan, C. L. Tilden, W. H. Payson*, and
*Mastick, Belcher & Mastick*, for Appellants.

The acts of the parties constituted them partners.
(*Chapman* v. *Hughes*, 104 Cal. 302; *Clonan* v. *Thornton*,
21 Miss. 380; *Decker* v. *Howell*, 42 Cal. 636–42; *Quinn* v.
*Quinn*, 81 Cal. 14; 1 Lindley on Partnership, 53, 84; *Bates*
v. *Babcock*, 95 Cal. 479; 29 Am. St. Rep. 133; *Fairchild* v.
*Fairchild*, 64 N. Y. 470; *Hulett* v. *Fairbanks*, 40 Ohio St.
233; *Canada* v. *Barksdale*, 76 Va. 899; *Ludlow* v. *Cooper*, 4
Ohio St. 1; *Duryea* v. *Whitcomb*, 31 Vt. 395.)  The account
should be set aside, and a new accounting taken, on the
books and accounts produced, and the testimony of de-

fendant Treadwell in relation thereto throws a suspicion of fraud and oppression upon the whole transaction. (2 Pomeroy's Equity Jurisprudence, secs. 902, 951, 955, 956; Civ. Code, secs. 2228, 2235, 2410, 2411; *Barrow* v. *Rhinelander*, 1 Johns. Ch. 550; 2 Bates on Partnership, sec. 961; *Merriwether* v. *Hardeman*, 51 Tex. 442; 1 Bigelow on Fraud, 312; *Bowman* v. *Patrick*, 36 Fed. Rep. 139; Kerr on Fraud, 151, 183; Abbott's Trial Evidence, 815; *Pomeroy* v. *Benton*, 57 Mo. 542; 77 Mo. 71; *Colton* v. *Stanford*, 82 Cal. 373; 16 Am. St. Rep. 137; *Smith* v. *Loring*, 2 Ohio, 440; *Black* v. *Merrill*, 65 Cal. 90; *Green* v. *Thornton*, 96 Cal. 72; *Diller* v. *Brubaker*, 52 Pa. St. 448; 91 Am. Dec. 177.) A *prima facie* case of fraud was made by showing the confidential relation of the parties, and the unfair advantage obtained by the parties occupying the positions of trust. (*Roach* v. *Caraffa*, 85 Cal. 436–45; *McDaniel* v. *Baca*, 2 Cal. 340; *White* v. *Leszynsky*, 14 Cal. 166; 1 Bigelow on Fraud, 135; *Worrall's Appeal*, 110 Pa. St. 359.)

*Lloyd & Wood*, for Respondents.

Nonsuit should be granted where, upon the evidence, a verdict in favor of the plaintiff would have been set aside as not supported by, but contrary to, the evidence. (*Fox* v. *Southern Pac. Co.*, 95 Cal. 234.) A party claiming the right to avoid a contract, must, upon discovering the facts entitling him to rescind, act with promptness in asserting the right. (*Bailey* v. *Fox*, 78 Cal. 396; *Gamble* v. *Tripp*, 99 Cal. 223; *Marten* v. *Burns Wine Co.*, 99 Cal. 355; *Grymes* v. *Sanders*, 93 U. S. 62.) As plaintiff was familiar with a greater part of the items making a debit side of the account, and had access to all the books, vouchers, and papers connected with the transaction, he cannot be allowed to say that he settled otherwise than upon his own judgment and upon his own knowledge of the surrounding circumstances. (*Bancroft* v. *Bancroft*, 110 Cal. 374; *Colton* v. *Stanford*, 82 Cal. 377; 16 Am. St. Rep. 137.) The evidence wholly failed to establish a partnership between the parties. (3 Kent's

Commentaries, 23; *Decker* v. *Howell*, 42 Cal. 636; Free-man on Cotenancy and Partition, sec. 111; *Bradley* v. *Harkness*, 26 Cal. 69.) Plaintiff having based his right to an accounting upon an alleged partnership is not en-titled to such relief upon proof of a mere tenancy in common. (*Noonan* v. *Nunan*, 76 Cal. 44; *Maynard* v. *Fireman's Fund Ins. Co.*, 34 Cal. 48; 91 Am. Dec. 672; *Hicks* v. *Murray*, 43 Cal. 522.)

McFARLAND, J.—After the plaintiff had introduced all his evidence in the court below the defendants moved for a nonsuit. The motion was granted and judgment ordered for defendants. Plaintiff appeals from the judgment and from an order denying his motion for a new trial.

The record is quite voluminous, and the arguments of counsel are elaborate; but, under our views of the case, it is not necessary for the length of our opinion to be proportionate to that of the transcript or the briefs.

It is averred in the complaint that the relation exist-ing between the parties to the action with respect to the moneys and property involved was that of a copartner-ship. This averment is denied in the answer; and a great deal of the arguments of counsel is directed to that question. In our opinion the relation between the parties, as shown by the evidence, was not that of a co-partnership; but we do not attach as much importance to that fact as is claimed for it by defendants, who con-tend that if there was no copartnership, then, no matter what the other facts were, the action must fail. The main purpose of the action was to set aside and annul a certain settlement made on December 2, 1891, upon an account stated, and to open up said account; and the facts stated in the complaint are not sufficient, leaving out of view the averment of copartnership, to warrant the relief asked as to said settlement.

The plaintiff, Downing, and the defendants Murray, Treadwell, Fuller, and Carroll, were the co-owners of certain mining claims and lands, situated in the terri-

tory of Alaska, the titles thereto standing in the name of Murray. The first of these claims was acquired about the year 1882, and is known as the "Bear's Nest." Not long afterward another claim was acquired called the "Douglas Island." From time to time certain other claims in the vicinity of the two above named were acquired by at least some of said persons. Each of these latter claims had a name, but it is sufficient here to call them the "outside claims." The record title to all the claims stood in Murray. He made a conveyance of one-fifth of the Bear's Nest and the Douglas Island to the plaintiff Downing, and to each of. the others; but plaintiff has no paper title to any of the outside claims.

About the year 1886 efforts were commenced to effect a sale of these claims, or parts of them. It is not necessary here to trace the various negotiations which resulted in such sale; it is sufficient to say that in the year 1888 a sale was effected, through the agency of a corporation called the Alaska Gold Company, of the Bear's Nest, and of certain described parts of said outside claims. (The Douglas Island was not included in the sale.) Conveyances were made to the Alaska Gold Company of the property sold by the said defendant Murray. The purchase price was $750,000 in cash, and about $500,000 in stock and bonds of said corporation. However, $100,000 of the $750,000 was to remain in escrow pending the hoped-for repeal of an act of Congress, known as the "alien act"—the real purchasers being, mostly, Englishmen. This $100,000 is still in escrow, and need not be further considered. Neither is it necessary to consider the matter of the stock and bonds. Of the $750,000, $650,000 was paid in cash, or its equivalent, to the defendant Treadwell; and it was the understanding of all the parties that Treadwell was to take charge of the money, pay off all expenses incurred in handling and selling the property, and, after settling all such expenses, to divide the balance between the parties according to their respective shares and rights. This money was paid to Treadwell some time in

the spring of 1889; and plaintiff's share of the $650,000 and a settlement which he made with Treadwell about said share are the matters here involved.

Plaintiff contends that he and the four defendants were each the owner of one-fifth of all the Alaska mining claims, including all of the outside claims, as well as the Bear's Nest and the Douglas Island; and that therefore he was entitled to one-fifth of the balance of said $650,000. Defendants contend that he had no ownership in the outside claims, and therefore is only entitled to such part of the $650,000 as is justly his proportion thereof as an owner of one-fifth of the Bear's Nest, and that his claim of ownership to the outside claims is of comparatively recent date.

On August 17, 1889, while the money was in the hands of Treadwell, and before any settlement, the plaintiff and the four defendants executed a written instrument, in which it was stipulated and agreed that the Bear's Nest should receive two-thirds of the said purchase money, and the other locations should receive one-third of said money, and the expenses should be borne in like proportion. This instrument was left with Treadwell, and afterward, but before any final settlement, he paid to plaintiff, and also the several defendants, large sums of money out of said fund of $650,000, upon the basis that plaintiff was only entitled to one-fifth of two-thirds of said fund; and defendants contend that plaintiff was thus estopped from denying the validity of said instrument and from claiming more than the said one-fifth of said two-thirds. We do not deem it necessary to pass upon this question of estoppel; but the instrument, and the testimony given by plaintiff as a witness, clearly show that at the date of the instrument he had knowledge of the claim made by defendants that the owners of the Bear's Nest and of the other locations were not the same, and that he had no interest in the latter, and that with such knowledge he afterward made his final settlement with Treadwell.

There was great difficulty among the parties in arriv-

ing at a settlement and final distribution of the balance
of the fund in the hands of Treadwell. The latter had
from time to time allowed each of them to draw out a
large proportion of his share—plaintiff having thus been
paid over $42,000, but there was still a considerable
amount awaiting final settlement. The business trans-
actions of the parties in connection with said mines had
been carried on in an exceedingly loose and irregular
manner, and without any system or explicit understand-
ing between them. Large expenses had been incurred
in assessment work, surveying, buying additional land,
and for other purposes connected with the mines, and
in negotiating and completing the sale. For the latter
purpose several trips were made by some of the parties
to New York and England and other points. Each of
the parties had personally paid certain of these expenses,
and each presented accounts against the fund for allow-
ance, and many items of these accounts were disputed.
Some of the parties were so hostile to each other that
they would not confer together. This was especially
the case with plaintiff and Murray, and their views
could, at last, only be communicated to each other
through Treadwell who was friendly with both. But
on December 2, 1891, a final settlement was at last made
between plaintiff and Treadwell. An account was stated,
showing the final balance due the plaintiff to be $35,-
374. On that day Treadwell paid said last-mentioned
sum of money to plaintiff, who received it as full pay-
ment of his share of said fund of $650,000, and signed
said account as "settled." Treadwell afterward, and
before the commencement of this action, settled with all
the other persons interested upon the same basis as
that upon which he had settled with plaintiff. He thus
settled with Murray, December 28, 1891; with Carroll,
February 5, 1892; with Fuller, February 24, 1892; and
on said February 24th he balanced his books. During
this time plaintiff acquiesced in his own final settlement
and made no attempt to rescind it, but nearly four
months afterward, and a month after Treadwell had

thus closed up the entire business and paid out the entire fund, the plaintiff commenced this present action.

We are satisfied that the court below was fully warranted in holding that the appellant made no showing to justify the cancellation of his deliberate and solemn act of settlement. It is clear that at the time of the settlement the appellant knew all of the substantial and important points of difference between his associates and himself; that he made the settlement with his eyes open; and that whatever concessions he made for the purpose of effecting a final settlement were made deliberately and intentionally. Of course, he knew that the others claimed that his interest in the fund was only that of a one-fifth owner of the Bear's Nest, and that the owners of the Bear's Nest were entitled to only two-thirds of the fund; and he knew that he was yielding that point and settling on that basis. There is no plausible reason why that question should be reopened. The other matters to which appellant now objects are items in the "expense account," that is, the part of the account which shows the amounts claimed by and allowed to each of the parties for moneys paid out for expenses incurred in connection with the mines, and for services, etc. But it appears that at the time of the settlement appellant and Treadwell had before them an account of these expenses, and went over them together, item by item; and appellant admitted in his testimony that there were only two items to which he then made any serious objections. These were an item of $10,000, claimed by Murray as money paid by him to a man named Benn; and $7,000, claimed by Murray, and called the "Portland expense" account. He for awhile objected somewhat strenuously to these two items; but he concluded to yield these objections, and settled with full knowledge that these items formed part of the account. In his complaint, and at the trial, he also objected to other items of the expense account; but it appears that long before the settlement he had reason to know, or expect,

that the aggregate of said account would be in amount about the same as that stated in the account by which he settled. On September 12, 1889, he executed to Treadwell a power of attorney authorizing the latter to act for him in making a settlement in accordance with the written agreement of August 17, 1889, hereinbefore referred to, and providing that "the expenses mentioned in said agreement are not to exceed the sum of $100,000"; and in the stated account which he signed, and by which he settled, the amount of said expenses was put at a figure only slightly greater than the one named in the power of attorney. It was $102,920.58. It abundantly appears that he did not make the settlement ignorantly. On the other hand, it appears that he knew, and for a long time before the settlement had known, what the other parties claimed, and, substantially, the extent and amounts of their claims; that he was a man of good business capacity; and that, looking over the whole field, and considering the advantages and disadvantages of any particular line of action, he concluded to accept the account as stated, settle in accordance with it, and take the money which he could not then have otherwise received. Such an act cannot be set aside at the will of either party. It could be legally set aside only upon a showing of fraud, undue influence, etc., which showing was not made. There were averments of such things, and of a conspiracy against him, but there was no evidence making a *prima facie* case of their existence. To grant the prayer of the complaint in the case at bar would be to do a gross wrong to Treadwell, who, upon the faith of appellant's deliberate act, has settled with all the other parties, and exhausted this fund, in accordance with the conditions and upon 'the basis solemnly assented to and adopted by appellant. As, under our views, no showing was made for setting aside the settlement, it is not necessary for us to inquire into the correctness of some of the items of the account which appellant now attacks.

There are some discussions in the briefs of the gen-

eral subject of granting nonsuits. With respect to this matter it is sufficient to say that, with a jury present, the judge should grant a nonsuit where a verdict in favor of plaintiff should be set aside for want of evidence to support it, and, in the absence of a jury, where the evidence is insufficient to support a judgment for plaintiff. The judge of the court below is presumed to have acted on this principle, and to have concluded that the evidence was thus insufficient, and there is no reason for holding that he abused his discretion in coming to that conclusion.

There are several exceptions to rulings upon the admissibility of evidence which we do not deem it necessary to discuss; for, even if well taken, they would not be of importance enough to work a reversal of the judgment.

The judgment and order appealed from are affirmed.

Henshaw, J., and Temple, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank.