[S. F. No. 4037.    Department Two.—June 20, 1905.]

In the Matter of Estate of ELBRIDGE DOLE, Deceased.
FRANK C. NOYES et al., Appellants, v. WALTER W.
DOLE et al., Respondents.

WILLS—CONTEST AFTER PROBATE—BURDEN OF PROOF—NONSUIT.—Upon
the contest of a will which has been admitted to probate, the burden
of proof is upon the contestants to show the grounds alleged for
revocation of the probate; and when the evidence for the con-
testants is so insufficient that it would have been the duty of the
court to set aside a verdict for the contestants, a nonsuit was
properly granted.

ID.—PRESUMPTION OF SOUND AND DISPOSING MIND—EVIDENCE—OLD AGE
AND FEEBLENESS.—The testator is presumed to have been of sound
and disposing mind, and where the court so found upon admission of
the will to probate, evidence showing that the deceased at the time
he made the will was eighty-three years old and feeble, and that
his memory was not perfect, cannot justify the court or jury in
setting aside the will.

ID.—COMPETENCY OF TESTATOR.—Old age alone, however great, cannot
invalidate a will, nor need the memory of the testator be perfect.
It is sufficient that at the very date of the execution of the will
he knew his property and the manner in which it was invested, and
his relatives who were the objects of his bounty.

ID.—RESIDENCE OF TESTATOR—CONCLUSIVE ADJUDICATION—COLLATERAL
ATTACK UPON JURISDICTION.—It is not ground for the contest of
a will which has been admitted to probate that the court had no
jurisdiction to admit it to probate, and the determination of the
probate court as to the residence of the deceased testator in the
county at the time of his death, which was not appealed from and
has become final, cannot be attacked collaterally by the contestants
by claiming non-residence of the deceased testator in such county
and his residence elsewhere at the time of his death.

APPEAL from a judgment of the Superior Court of Ala-
meda County.   W. E. Greene, Judge.

The facts are stated in the opinion.

Jellet & Meyerstein, and R. H. E. Espey, for Appellants.

Gibson, Woolner & Crosby, for Respondents.

COOPER, C.—This is an appeal from a judgment of non-
suit dismissing the contest of the will of deceased.   The facts

are substantially as follows: In July, 1900, deceased was of the age of about eighty-three years, and the owner of an estate of the value of some eighteen thousand dollars. He then resided, and had for many years resided, in Hayward, Alameda County, with Mary A. Dole, the widow of his deceased brother, who had taken care of him and furnished him a home. He had no wife nor child nor grandchild. He made his last will and testament and therein bequeathed to his nieces, Lizzie Dole, Flora Dole, Helen Noyes, and Caroline Webb, being four of the contestants, all residents of Bangor, Maine, the sum of five hundred dollars each. To Mrs. Eva R. Hichborn, his niece and a daughter of Mary A. Dole, and to her two children, Blanche A. Hichborn and A. F. Hichborn, he gave five hundred dollars each. The residue of his estate he left to his sister-in-law, Mary A. Dole, and her son, Walter W. Dole, share and share alike, and appointed said Walter W. Dole the executor of his will. The will was duly executed and witnessed by E. G. Ryker and E. S. Warren.

In April, 1901, Mary A. Dole applied for and was granted letters of guardianship upon the person and estate of deceased by the probate court of Alameda County, and she duly qualified as such guardian. About this time Mary A. Dole and deceased left Hayward and made their home with Mrs. Hichborn in the city of San Francisco, where deceased continued to make his home, receiving the care and attention of his sister-in-law and niece, until May, 1902, when he died at the age of eighty-four years and six months. In June, 1902, the executor named therein filed the will and petition for letters testamentary in the county of Alameda. The will was admitted to probate by the superior court of Alameda County on the seventh day of July, 1902, and Walter W. Dole appointed executor thereof. The court found in the order admitting the will to probate that deceased at the time of his death was a resident of the county of Alameda, and that at the time of the execution of the will he was of sound and disposing mind and not acting under duress or undue influence.

This contest praying for the revocation of the probate of the will was commenced July 3, 1903, within the year after its admission to probate. The contest came on for hearing in April, 1904, before the court with a jury, and at the close of

the testimony on the part of the contestants, the court, on motion of the attorney for the executor, granted a nonsuit.

Counsel for appellants claim that there are two propositions on which the case should be reversed: 1. That the evidence was sufficient for the case to go to the jury upon the question of the mental capacity of the deceased to make the will, and hence that the court erred in holding otherwise; and 2. That the superior court of Alameda County had no jurisdiction because deceased did not reside in that county at the time of his death. We will discuss the two propositions in the order presented.

The contestants allege about all the statutory grounds of contest under five separate headings, alleging that the will was not the will of deceased, that it was not signed by him, that it was not attested by two witnesses as required by law, that it was procured by restraint, undue influence, and fraudulent representations, and that at the time it was executed deceased was ''not of sound and disposing mind, and was a person of unsound mind, and wholly incompetent and unable to execute a will, or any other legal document, and wholly incompetent to transact any business whatever, and was *non compos mentis.*''

All the alleged grounds of contest are now abandoned except the latter, which brings us to the question as to whether or not the evidence is sufficient to show that deceased, at the time he executed the will, was not of *sound* and *disposing mind.* It must be borne in mind that deceased is presumed to have been of sound and disposing mind, that the probate court has found and adjudged in its order admitting the will to probate, that he was of sound and disposing mind, and that the burden was upon contestants to allege and prove that he was not of such sound and disposing mind. While evidence of the condition of the testator's mind, both before and after the date of the testamentary act, was admissible, yet such evidence was important only so far as it tended to show the condition of the mind of deceased at the very date of the execution of the will. (*In re Wilson,* 117 Cal. 276, [49 Pac. 172, 711].) The right to dispose of one's property by will is most solemnly assured by the law of the land, and is a most valuable incident to ownership. The beneficiaries of a will are as much entitled to protection as any other prop-

erty-owners, and hence the rule that a will cannot be set aside except upon allegation and proof that it was not in fact the will of the testator, or that he did not have a mind capable of disposing of his property. (*In re McDevitt,* 95 Cal. 33, [30 Pac. 101].)

The evidence shows that deceased, at the time he made the will, was old and feeble and fast approaching the end, but this of itself is not sufficient to justify the court or jury in setting aside the will. Even in old age, if the testator knows his property and the manner in which it is invested, and his relatives who are the object of his bounty, he may make a valid will. It is not necessary that his memory be perfect. The aged person often fails to remember the details of business and the names of his friends, but this is often the case with persons in the prime of life. The memories and reasoning powers of people, even in the prime of life, differ as the features of each individual differ in a multitude of ten thousand. Of course, if the mind of the testator no longer grasps the facts in relation to his property, its situation, and the objects of his bounty, there is no mind capable of disposing. (1 Underhill on the Law of Wills, secs. 114-117, inclusive.) In the latter section the author says: "It is safe to say that old age alone, no matter how great, never did and cannot invalidate a will, if from all the evidence it appears that the testator had sufficient capacity."

In *Waddington* v. *Buzby,* 45 N. J. Eq. 173, the court held that deceased, although feeble and eighty-three years old, was capable of making a will. The court said: "She was feeble and forgetful to the extent of persons ordinarily at such an advanced age, and she was nearly blind, so that she could not read, or did so with difficulty. But she could at that time go about the house, knew the members of the family, talked about her business affairs, remembered the amount of her property, and where it was invested, objected to the reduction of the percentage of interest, took part in the routine of the house and the payment of bills, and conversed with visitors whom she knew. She had been an intelligent woman, but not of very strong will, rather reticent than talkative, and became more silent and absent-minded as she grew old. She was injured by a fall, and failed in physical and mental strength from that time gradually until her death. The opin-

ions of witnesses as to her mental capacity are of no weight, unless sustained by facts on which such opinions are founded. . . . It is shown, to my satisfaction, that the testatrix, at the time she executed this writing was capable of recollecting the property she was about to dispose of, understanding the manner of distributing it therein set forth, the objects of her bounty, and the nature of the business in which she was engaged. If so she had the requisite mental capacity.''

This court said in *Estate of Motz,* 136 Cal. 562, [69 Pac. 294] : ''The soundness of mind required for making a will has relation to the act of the testator in making final disposition of his property as he desires. Although feeble in health, suffering under disease, aged and infirm, the testator, if of sound mind with reference to the disposition of his property, may make a will. If he is able to understand and carry in mind the nature and situation of his property and his relations to his relatives and those around him, with clear remembrance as to those in whom, and those things in which, he has been mostly interested, capable of understanding the act he is doing, and the relation in which he stands to the objects of his bounty, free from any delusion, the effect of disease, which might lead him to dispose of his property otherwise than he would if he knew and understood what he was doing, he has the capacity to make a will.''

We have carefully read all the evidence, and in view of the rules above laid down we are of opinion that the evidence was not sufficient to show the jury that deceased was of unsound mind at the time he made the will. It would serve no useful purpose to particularly narrate the evidence. Deceased, at and about the time he made the will, talked intelligently about his business affairs, remembered the property he owned and its location and value; he went daily to the post-office for the mail, and would sit down and rest and smoke, talking with his acquaintances. About this time he went to his neighbor, Armstrong, to have him compute the interest on some promissory notes. He talked to Armstrong about his money matters and about investing in government bonds, told him he had four thousand dollars in the bank which he desired to invest. Armstrong told him to see his nephew, Walter Dole, and have the money put in a savings bank in San Francisco, which advice deceased appears to have taken. After he

made the will, deceased went to Walnut Creek for the purpose of collecting eight hundred dollars that was due him from one Wood, took one Abdol with him, and they collected the money. He told Armstrong that he had two houses at Walnut Creek, but could not collect any rent; that he was going to the firm of Crosby & Ryker at Walnut Creek and get them to attend to his business there. He always knew Armstrong and conversed with him about business. He often visited the shop of one Bridge, a neighbor, and told Bridge that he used to work at making buggies and wagons, and that he used to get several hundred dollars for a buggy such as is now sold for seventy-five dollars. On one occasion he told Bridge about having loaned twenty dollars to one Chisholm, and that he had not succeeded in collecting it. He also told Bridge about his relationship to Walter Dole. He went often to the jeweler's to get his watch regulated. He loaned ten dollars to John M. Bridge, but when Bridge wanted a larger loan he "found he could n't make anything out of him." He paid his board to his sister-in-law and consulted a lawyer about his business. His will shows that he remembered his nieces in Bangor, Maine, and he gave the bulk of his property to those who had taken care of him in his old age. This was the most natural thing to do. It indicates a just and proper feeling toward those who had given him comfort and care in his old age. It is true, that several witnesses testified that he was childish and forgetful, but this evidence nearly all had relation to times after he had made the will. Of course, during the later years of his life he became quite feeble, and would often go to sleep in his chair while smoking his pipe. No acts or conduct of deceased at or about the time he made the will, would indicate that he did not know what he was doing, or what property he was disposing of. Neither of the attesting witnesses to the will were called as witnesses nor the party who wrote it. It is clear that if the jury had found a verdict for contestants on this testimony it would have been the duty of the court to set it aside. In such case it was its duty to grant a nonsuit. (*Downing* v. *Murray,* 113 Cal. 455, [45 Pac. 869].)

The contestants cannot be allowed in this collateral proceeding to claim that deceased was not a resident of Alameda County at the time of his death. In hearing the petition for

probate of the will the court found and determined that deceased was a resident of Alameda County at the time of his death. The order admitting the will to probate was not appealed from and became final. (Code Civ. Proc., sec. 1715.) In the petition for the revocation of the probate of the will the contestants do not attempt to claim or allege that deceased was not a resident of the county of Alameda at the time of his death, or that the superior court of Alameda County did not have jurisdiction; on the contrary they allege that the will was admitted to probate "by an order duly given and made." In their opening brief they allege that evidence was offered "in support of the single ground of contest that the testator was incompetent to make a will at the time the will under contest was executed." Not only this, but the statute does not give the right to contest a will after probate upon the ground that the court did not have jurisdiction. The statute provides: "If, upon hearing the proofs of the parties, the jury shall find, or if no jury is had, the court shall decide, that the will is for any reason invalid, or that it is not sufficiently proved to be the last will of the testator, the probate must be annulled and revoked." (Code Civ. Proc., sec. 1330.) The determination of the probate court as to the residence of deceased at the time of his death is final in all collateral proceedings. (*Irwin* v. *Scriber*, 18 Cal. 500; *In re Griffith*, 84 Cal. 107, [23 Pac. 528, 24 Pac. 381]; *In re Eichhoff*, 101 Cal. 605, [36 Pac. 11]; *Estate of Latour*, 140 Cal. 421, [73 Pac. 1070, 74 Pac. 441].) As this proceeding was instituted for the purpose of revoking the probate of a will which had become final except subject to attack in the manner provided by the statute, and as the statute does not provide that want of jurisdiction is one of the grounds upon which such probate may be revoked, it is clear that the question now attempted to be raised is collateral. The petition filed by contestants gave respondent no notice of any such ground of attack. It was not one of the issues made by the pleadings before the trial court.

Error is claimed to have been committed by the court in its ruling in striking out on respondents' motion an answer of the witness Bridge, and in sustaining respondents' objection to a question asked by contestants of the witness Sigle. We think the rulings were proper, and if otherwise, they were

not of sufficient importance to justify a reversal of the judgment; in fact, counsel for appellants do not insist upon them in their reply brief.

We advise that the judgment be affirmed.

Harrison, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is affirmed.

Henshaw, J., McFarland, J., Lorigan, J.