[Civ. No. 2059.   Third Appellate District.—March 18, 1920.]

In the Matter of the Estate of ROBERT CAMPBELL, Deceased. KATHERINE C. TUCKER et al., Appellants, v. ROBERT W. CAMPBELL, as Executor, etc., et al., Respondents.

[1] NONSUIT—NATURE OF MOTION—QUESTION PRESENTED.—A motion for a nonsuit presents for decision a question of law and in effect amounts to a demurrer to the evidence, and, therefore, necessarily assumes the truth of all the testimony presented in behalf of the plaintiff.

[2] WILLS—PROCEEDING TO CONTEST—SUBMISSION TO JURY—EVIDENCE. In determining whether or not, in a proceeding to contest a will, the evidence produced by the contestants is sufficient to require the submission of the case to the jury, the same rules apply as in civil cases, and every favorable inference fairly deducible and

every favorable presumption fairly arising from the evidence produced must be considered as facts proved in favor of the contestants; and if there is any substantial evidence tending to prove in favor of the contestants all the facts necessary to make out their case, they are entitled to have the case go to the jury for a verdict on its merits.

[3] ID.—ADMISSION OF EVIDENCE OF BOTH PARTIES—MOTION FOR NONSUIT—CONSIDERATION OF EVIDENCE.—The rule governing the determination of the question whether a nonsuit should or should not be granted in a given case does not always apply with the same strictness where the motion is made after both the plaintiff and the defendant, or, in the case of the contest of a will, both the contestant and the proponent have presented their evidence, and it is not error to grant the motion where, upon all the evidence, it is clear that if a jury should bring in a verdict against the defendant it would be the duty of the court to set it aside and order a new trial.

[4] ID.—PROCEEDING TO REVOKE PROBATE — BURDEN OF PROOF — PRESUMPTION OF TESTAMENTARY CAPACITY.—In a proceeding to secure the revocation of the probate of a will upon the ground of testamentary incapacity, the attack being upon the order by the court admitting the will to probate and by which the court expressly found that the deceased was of sound and disposing mind, the burden is upon the contestants to overcome the effect of the primary presumption of the testamentary capacity of the deceased and also of the order involving the adjudication, upon presumptive sufficient evidence to justify it, that the deceased was mentally competent to make a will at the date of the execution of the instrument whose legality is under attack, and to show that he was not of such sound and disposing mind.

[5] ID.—CONDITION OF MIND PRIOR AND SUBSEQUENT TO TESTAMENTARY ACT—EVIDENCE.—Evidence of the condition of the testator's mind, both before and subsequent to the date of the testamentary act, is always admissible as having a tendency to show what the condition of his mind was at the date of the making of the will; but it does not always follow from the fact that a person may, before and after the purported execution of his last will and testament, display some mental peculiarities or idiosyncracies which have not always been in his lifetime characteristic of him or which have not been exhibited by him when he has been in what may be supposed to have been the normal state of his mind, that he is incapable, mentally, of exercising a sound will and judgment in disposing of his estate by testament.

[6] ID.—MENTAL CAPACITY—OPINION EVIDENCE—WEIGHT.—The opinion of a witness that a person is of unsound mind cannot be

6. Weight of opinion evidence as to mental capacity, notes, 38 L. R. A. 745; 39 L. R. A. 328, 331; 42 L. R. A. 767.

stronger than, or of superior evidentiary weight to, the reasons upon which he bases his opinion.

[7] ID.—PROCEEDING TO REVOKE PROBATE — INSUFFICIENCY OF EVIDENCE.—In this proceeding to secure the revocation of the probate of a will upon the ground of testamentary incapacity, while the testimony introduced afforded the inference that the deceased at the times referred to by the witnesses often used intoxicating liquors to an excessive degree, and was frequently ill, perhaps from the use of such liquors and his venerable years, there was nothing in the testimony to indicate that his mental condition was impaired when he was not under a state of intoxication, or that he was not sober and perfectly rational at the time he made the will.

APPEAL from a judgment of the Superior Court of Butte County. Eugene P. McDaniel, Judge. Affirmed.

The facts are stated in the opinion of the court.

John S. Partridge, George E. Gardner, James A. McGregor and Mastick & Partridge for Appellants.

W. E. Duncan, Jr., and Alta Duncan for Respondents.

HART, J.—On the twenty-first day of May, 1917, the will of Robert Campbell, deceased, was admitted to probate in the superior court of Butte County and letters testamentary were issued to Robert W. Campbell, as executor. On the 30th of May, following, the above-named contestants commenced these proceedings by filing their petitions praying for the revocation of said will on the ground that the deceased was, at the time of the making of the purported will, without testamentary capacity by reason of mental unsoundness. Issue was joined by the filing of answers by the proponents and the trial commenced, before a jury, on October 8, 1918. After the introduction of testimony on behalf of both contestants and proponents the latter moved for a nonsuit, which was granted, and judgment was entered dismissing the action of the contestants. The appeal is by contestants from the order granting the nonsuit and from the judgment.

The contestants and the proponents, with the exception of Sallie Moore, are nieces and nephews of the deceased and are legatees under the will, the sums bequeathed to the contestants varying from ten dollars to one thousand dollars. The decedent left no wife or children and the value of his estate

was one hundred and seventeen thousand dollars. After the payment of the legacies mentioned in the will the residue of the estate was left to Robert W. Campbell. The will in question was dated January 13, 1917, and the testator died on April 25, 1917, aged eighty-three years. The will consisted of six pages, each of which was signed by the testator in addition to the signature at the bottom of the instrument, which was attested by two witnesses.

It is stated in appellants' brief that the testimony on behalf of proponents "does not appear in the engrossed bill of exceptions for the reason that none of it was material on a determination of the correctness of the court's ruling on the motion of the proponents herein," and in respondents' brief it is stated: "At the conclusion of the contestants' case a motion for nonsuit was made and granted."

No findings were made, but, among the recitals of the judgment is the following: "The contestants introduced evidence, oral and documentary, in support of their petition for the revocation of the probate of the last will and testament of Robert Campbell, deceased. At the conclusion of the contestants' case, the proponents introduced evidence, oral and documentary, in support of the allegations of their answer. At the conclusion of proponents' case, counsel for proponents moved that the court grant a nonsuit and dismiss the action on the ground that the contestants had failed to prove the allegations of their contest or their petition for the revocation of the probate of the last will and testament of Robert Campbell, deceased, and that the contestants had . . . in particular failed to produce sufficient or any evidence to show that Robert Campbell, the testator, was, at the time of the making of said will, or at any other time, of unsound mind, or that said will was executed while said testator was of unsound mind."

The contention on this appeal is, of course, that the motion for a nonsuit was erroneously granted, the appellants claiming that the testimony presented by them was sufficient to compel the submission of the case to the jury. There was a large amount of testimony submitted by contestants, but we will refer in a general way only to so much of the testimony as we conceive bears directly or reflects any light upon the question at issue.

[1]  It is thoroughly settled, as counsel for appellants declare, that a motion for a nonsuit presents for decision a question of law. Such a motion in effect amounts to a demurrer to the evidence and, therefore, necessarily assumes the truth of all the testimony presented in behalf of the plaintiff. As was said in *Mitchell* v. *Brown*, 18 Cal. App. 117, [122 Pac. 426]:

"On a motion for a nonsuit on the close of plaintiff's case, the court is compelled to assume the truth of all of the testimony produced by plaintiff. The question of the credibility or the weight of the evidence cannot under such circumstances arise. In fine, as we have already in effect pointed out, the line of distinction between the power of the court when considering the evidence on a motion for a nonsuit on the close of plaintiff's case and the power vested in it when considering the evidence upon the merits is that, in the former case a pure question of law is submitted for the court's decision, and there is, therefore, no discretion in the court to pass upon the credibility of the witnesses for plaintiff or the probative value of the testimony produced by plaintiff, while in the latter case a question of fact is submitted to the court, it then being called upon to determine whether the issue has been established by the proofs, and the court, like a jury where the issues of fact are so tried, may then weigh the testimony and to that end pass upon the credibility of the witnesses and, finally, conclusively determine the truth as to the ultimate fact."

[2]  In *Estate of Arnold*, 147 Cal. 583, 586, [82 Pac. 252, 253], Mr. Justice Shaw, of our supreme court, said: "In determining whether or not in a proceeding to contest a will the evidence produced by the contestants is sufficient to require the submission of the case to the jury the same rules apply as in civil cases. Every favorable inference fairly deducible and every favorable presumption fairly arising from the evidence produced must be considered as facts proved in favor of the contestants. Where evidence is fairly susceptible of two constructions, or if either of several inferences may reasonably be made, the court must take the view most favorable to the contestants. All the evidence in favor of the contestants must be taken as true, and if contradictory evidence has been given it must be disregarded. If there is any substantial evidence tending to prove in favor

of the contestants all the facts necessary to make out their case, they are entitled to have the case go to the jury for a verdict on its merits. (*Vermont etc. Co.* v. *Declez,* 135 Cal. 579, [87 Am. St. Rep. 143, 67 Pac. 1057] ; *Freese* v. *Hibernia Sav. & L. Soc.,* 139 Cal. 392, [73 Pac. 172] ; *Hanley* v. *California etc. Co.,* 127 Cal. 237, [59 Pac. 577] ; *Ferris* v. *Baker,* 127 Cal. 522, [59 Pac. 937] ; *Goldstone* v. *Merchants etc. Co.,* 123 Cal. 625, [56 Pac. 776] ; *Zilmer* v. *Gerichten,* 111 Cal. 73, [43 Pac. 408] ; *Pacific M. L. I. Co.* v. *Fisher,* 119 Cal. 566, [42 Pac. 134] ; *O'Connor* v. *Hooper,* 102 Cal. 528, [36 Pac. 939] ; 2 Deering's Digest, p. 2105.) ''

By the rules above stated we must be guided in determining whether the evidence presented by the contestants is of such a character in probative effect as to have justified the trial court in holding, as a matter of law, that it was insufficient to warrant, legitimately, any inference that the testator, at the time of making the testament in question, was without testamentary capacity.

Although the judgment of nonsuit recites that the motion for a nonsuit was made and granted after the proponents had introduced testimony in rebuttal of the showing made by the contestants, the state of the record before us is such that we are required to predicate our conclusion here solely upon the testimony as presented by the contestants, since, for some reason, the testimony introduced by the proponents has not been brought up to this court. We must assume, therefore, that the motion was based entirely upon such proof as was made by the contestants. **[3]** In this connection, it may be suggested that the rule governing the determination of the question whether a nonsuit should or should not be granted in a given case does not always apply with the same strictness where the motion is made after both the plaintiff and the defendant, or, in the case of the contest of a will, both the contestant and the proponent, have presented their evidence—in other words, after the evidence on both sides is all in. In *Estate of Morey,* 147 Cal. 495, 507, [82 Pac. 57, 61], this proposition is thus stated: ''With regard to the granting of a motion for nonsuit made at the close of the evidence for plaintiff and defendant, the rule seems to be well established that the trial court has discretion, and that it is not error to grant the motion where, upon all the evidence, it is clear that if a jury should bring

in a verdict against the defendant it would be the duty of
the court to set it aside and order a new trial.'' (See, also,
*Geary* v. *Simmons,* 30 Cal. 224; *Vanderford* v. *Foster,* 65
Cal. 49, [2 Pac. 736]; *Fagundes* v. *Central Pac. R. R. Co.,*
79 Cal. 100, [3 L. R. A. 824, 21 Pac. 437]; *Fox* v. *Southern
Pacific Co.,* 95 Cal. 234, [30 Pac. 384]; *Toulouse* v. *Pare,*
103 Cal. 251, [37 Pac. 146].) In view of the rule as applied
under such circumstances, it may also be suggested that had
the testimony presented by the proponents in opposition
to that of the contestants been incorporated into this record
and thus duly certified to this court, it is probable that we
would have been compelled to hold, even if the testimony of the
contestants were stronger than as we viewed it as tending
to show the testamentary incompetency of the testator at the
time he executed the testament in question, that the order
granting the nonsuit involved only the exercise of a dis-
cretion with which this court is not legally authorized to
interfere. Thus the labor of this court would perhaps have
been greatly lessened. We may further add that if the
testimony of the proponents possessed any evidentiary value
whatever in opposition to or rebuttal of that presented by the
contestants, we are at a loss to understand why it was not
brought here, duly authenticated. But, however all this
may be, we are still of the opinion that the court below com-
mitted no error in granting the nonsuit.

[4] The contestants launched their attack against the
validity of the will because of the alleged mental incompe-
tency of the testator to make such disposition of his prop-
erty and estate in the face of the presumption that the
testator was of sound and disposing mind at the time he
executed the challenged testament. Furthermore, it must
be borne in mind that this proceeding does not involve a
contest of a petition for the probate of the will, but an at-
tack upon the order by the court admitting the will to
probate. That order was made presumptively upon evidence
showing that the testator, at the time he made the will, was
of sound and disposing mind—that is, that he was possessed
of testamentary capacity. Indeed, by its order (which is,
of course, in the record) the court expressly found that de-
ceased was of sound and disposing mind and, therefore,
mentally capable, at the time of the execution of the will, of
disposing of his estate by testament. It follows that the

burden was upon the contestants to overcome the effect of the primary presumption of the testamentary capacity of the deceased and also of the order involving an adjudication, upon presumptively sufficient evidence to justify it, that the deceased was mentally competent to make a will at the date of the execution of the instrument whose legality is under attack here, and to show that he was not of such sound and disposing mind. (*Estate of Dole,* 147 Cal. 188, 190, [81 Pac. 534].)

The testimony presented by the contestants does not, in our opinion, necessarily show or tend to show that the deceased was not mentally capable of making a will at the time that he made the will in question. It is not necessary that we should enter herein upon an analysis of the testimony to establish this conclusion. A general reference to it will be sufficient. Much of the testimony relates to acts and conduct by the deceased long anterior to the date of the execution of the instrument and some of it relates to certain acts which occurred after the will was made and when the deceased was ill and under the care of a nurse. [5] Of course, evidence of the condition of the testator's mind, both before and subsequent to the date of the testamentary act, is always admissible as having a tendency to show what the condition of his mind was at the date of the making of the will; but it does not always follow from the fact that a person may, before and after the purported execution of his last will and testament, display some mental peculiarities or idiosyncracies which have not always been in his lifetime characteristic of him or which have not been exhibited by him when he has been in what may be supposed to have been the normal state of his mind, that he is incapable, mentally, of exercising a sound will and judgment in disposing of his estate by testament. Such testimony is, of course, important in the determination of such an issue as is presented here, but it must be of such character and force as very clearly to show that the unusual peculiarities which have invaded the mentality of the person are the result of the complete alienation of reason and the consequent incapacity to exercise the will in such manner as to enable him to do those things with respect to the highest concerns of life which, in his normal mind, he would want and desire to do. There must be shown a dethronement of reason and the total loss

of ability to guide the will so that its expression will harmonize with the desire and intent of a testator when mentally in a condition of sanity. It is not true in every case that an aberrated mind is wholly incapable of forming and expressing a sane and sound intent founded in a sane and sound will. But it is often true that one with a defective memory, who cannot readily recognize old friends or recall happenings, even those of more or less importance, with which he has been associated in his lifetime, is not bereft of testamentary capacity. Indeed, one of the characteristics of old age is forgetfulness or lapses of memory, and yet from the fact that an aged person may be afflicted with these mental shortcomings it does not follow that he is incapable properly of attending to his business or of disposing by testament of his estate according to the course he wishes it to take.

The situation in this case as it is disclosed by the testimony is simply this: That the deceased had been for many years a heavy drinker of intoxicating liquors, and during the latter years of his life drank such liquors to excess; that he was a very old man when he made his will and that he was feeble, physically; that on occasions he was so ill as to be compelled to take to his bed, the cause of such illness, it is to be inferred from the evidence, being the excessive use of alcoholic liquors; that he could not readily remember old acquaintances when their names were mentioned to him or when they met and greeted him, and in this connection it is to be said that the testimony shows that in almost all instances where he displayed a defective memory in that particular he would, after some reflection, remember the friends referred to; that he often spoke of the Bible and would ask his friends if they thought he was saved and would cry very often. There is nothing in the facts thus mentioned which are necessarily inconsistent with the adjudication previously made that he was, when he made his will, of sound and disposing mind in a testamentary sense. There is, in short, as we view it, nothing in the testimony which legitimately warrants the inference that the testator was, when he made his will, wanting in testamentary capacity. His feeble physical condition and his defective memory were no doubt due to the joint effect of excessive drinking and the ravages of old age. He was undoubtedly physically infirm and

feeble and his mentality not as firm and strong as in his younger years, and when this is said all that the testimony shows and every legitimate inference it warrants are stated. Some of the witnesses, it is true, expressed the opinion that he was of unsound mind, but their opinions were expressly planted upon the proposition that he was old, had been a heavy drinker, and that his physical health was impaired. [6] The opinion of a witness that a person is of unsound mind can be no stronger than or of superior evidentiary weight to the reasons upon which he bases his opinion. No one will say that it is true, as an abstract proposition, that merely because a person is aged and uses intoxicating liquors in an excessive degree, hs is insane in the sense or to the extent that he is incapable of attending to his business intelligently or of disposing of his estate by testament according to his wishes in that regard.

But there is some testimony from which the inference that he was not of unsound mind at the times to which the witnesses referred is positively justifiable. One witness, who was an old acquaintance of the deceased, said that he had often seen the latter under the influence of intoxicating liquor and act like any person in a state of intoxication from drinking such liquors, but that he could not say that deceased was crazy or of unsound mind. A niece of the deceased (Mrs. Lee) testified that there were periods during his illness when his mind was clear on "little every-day topics." The nurse who attended deceased during his illness in 1915 said that deceased suffered from physical ailments and had been under a doctor's care for some time; that he seemed like a man "about half sick"; that he would talk of matters which had happened many years previously, but that current matters "slipped his mind. He often told the same story over again," she said. "But," she added, "a great many old people do that." She said that when she went to deceased's house to nurse him, the doctor said to her that deceased "was getting over a big drunk." Another circumstance showing that deceased was not only not insane at the time of the happening of said circumstance, but of keen intelligence, was when the deceased explained to the witness, Strang, an employee of the Western Pacific Company, how, he (Strang) could take a drink from a flask of whiskey which he (deceased) had in his possession while

Strang was engaged in performing his duties at the depot of said company without being detected in the act by the foreman or other employee under whom he was working, Strang having said to the deceased when the latter invited him to drink from the flask that it was against the rules of the company for employees to drink intoxicants while on duty. All this testimony tended to show not only that the deceased was of such sound mentality as that he was competent to make a will and so dispose of his property as his heart's desire dictated, but that his indisposition physically and mentally at the times referred to by the witnesses was merely the effect of over-indulgence in alcoholic liquors and that, if at times from said cause he was not entirely responsible mentally, he still often had rational moments and was capable of discussing current topics.

There are still other considerations which tend to show that at the time he made his will the deceased knew perfectly well what he was doing. He was a bachelor and had no direct heirs. The principal beneficiary of his bounty was his nephew, and the contestants were also nephews and nieces (one a cousin) in kin. Each of those he mentioned by name in his will, giving to each a legacy of more or less importance in value. It is thus to be seen that he had in memory when he made his will all his relatives who are interested enough in his estate to attempt to void the testament. It will also be observed that his testamentary disposition of his estate is not an unnatural one, as he gave it entirely to his kins-people by blood. Another fact of some significance to which attention may be directed is that the instrument consisted of six pages of writing and that he subscribed his name to each of the pages thereof, thus making certain what his intent was as to each bequest and devise. The following cases will be found, upon comparison, to be very near the instant case as to the general features thereof: *In re McDavitt,* 95 Cal. 22, [30 Pac. 101]; *Estate of Kendrick,* 130 Cal. 361, [62 Pac. 605]; *In re Redfield,* 116 Cal. 637, [48 Pac. 794]; *Estate of Packer,* 164 Cal. 527, [129 Pac. 778]; *In re Langford,* 108 Cal. 613, [41 Pac. 701]; *Estate of McCrellish,* 167 Cal. 713, [L. R. A. 1915A, 443, 141 Pac. 257]; *Estate of Collins,* 174 Cal. 666, [164 Pac. 1110]; *Estate of Purcell,* 164 Cal. 301, [128 Pac. 932]; *Estate of Chavalier,* 159 Cal. 168, [113 Pac. 130]; *In re*

*Wilson,* 117 Cal. 271, [49 Pac. 172]; *Estate of Carithers,* 156 Cal. 423, [105 Pac. 127].

[7] But we have pressed the inquiry far enough. As above stated, the testimony to which we have herein made a brief and fair reference speaks for itself, and, while it affords the inference that deceased at the times referred to by the witnesses often used intoxicating liquors to an excessive degree, and was frequently ill, perhaps from the use of such liquors and his venerable years, there is nothing in the testimony to indicate that his mental condition was impaired when he was not under a state of intoxication. There is no evidence that he was not sober and perfectly rational at the time he made the will. (*Estate of Fraser,* 177 Cal. 266, [170 Pac. 601]; see, also, *Estate of Motz,* 136 Cal. 558, 562, [69 Pac. 294], and other cases cited in the opinion in the Fraser case.) We, therefore, repeat that we do not think that the case as made by the contestants should have been submitted to the jury, particularly in view of the proposition that the deceased had previously been judicially declared, upon evidence presumptively sufficient to support the adjudication, to be of mental soundness when he executed the will and so possessed of testamentary capacity.

In concluding, it is not improper to say that we are informed by the briefs that the contest had once before been tried and a verdict rendered in favor of the contestants, but that the trial court granted a new trial on the ground that the evidence was insufficient to justify the verdict. And in the present case the trial court (presided over by a different judge) declared, in a written opinion supporting its decision in granting the motion here complained of, and which opinion is printed in the brief of respondent, that upon the whole testimony it would grant a new trial if the case were given to the jury and a verdict for contestants returned. These matters are, of course, *dehors* the record, but we present them as showing that the two different judges who presided at the two different trials of this contest were of the same opinion as to the effect of the evidence presented by the contestants in support of their contest and that it is not probable that a different result would be reached if the case were sent back for trial on the merits.

The judgment is affirmed.

Ellison, P. J., *pro tem.,* and Burnett, J., concurred.