[Civ. No. 3420. Second Appellate District, Division One.—December 11, 1920.]

In the Matter of the Estate of PETER McGUIRK, Deceased.

[1] WILLS — INSANITY OF TESTATOR — WHEN VALIDITY OF WILL AFFECTED.—Insanity of a testator, in order to affect the validity of his will, must be either of such a broad character as to establish mental incapacity generally, or some specific form thereof, by reason of which the testator is the victim of hallucination or delusion.

[2] ID.—CONTEST OF—UNSOUNDNESS OF MIND OF TESTATOR—EFFECT ON WILL—EVIDENCE—NONSUIT.—In this contest of the probate of a will upon the ground of mental incompetency, conceding the facts that the testator was eccentric and that he said and did things inconsistent with what might be deemed conventional rules justified the inference that his mental faculties were impaired and weakened to an extent which warranted the conclusion that he was of unsound mind, there having been nothing in the evidence which tended, either directly or inferentially, to prove that his testamentary act was in the slightest degree influenced or affected by such condition of mind, a motion for nonsuit was properly granted.

APPEAL from a judgment of the Superior Court of Kern County. T. N. Harvey, Judge. Affirmed.

The facts are stated in the opinion of the court.

E. J. Emmons and Jackson Mahon for Appellant.

J. W. Wiley and R. B. Lambert for Respondent.

SHAW, J.—Peter McGuirk died on the third day of August, 1919, leaving a holographic will, dated June 7, 1918. Upon the presentation of the will for probate by Josephine H. Gunston, the sole legatee named therein, a contest thereof, upon the ground that at the time of the execution of the will the deceased was not of sound or disposing mind or memory and was incompetent to make a will, was filed by Mrs. Lizzie Kersey, a sister of deceased.

1. Insane delusions as invalidating will, notes, 63 Am. St. Rep. 94; Ann. Cas. 1916C, 4, 29, 33, 35; Ann. Cas. 1918D, 471.

The case was tried before a jury and, at the conclusion of contestant's evidence, the court granted a nonsuit and rendered a judgment admitting the will to probate, from which contestant has appealed.

[1] Appellant concedes the well-recognized rule that insanity of a testator, in order to affect the validity of his will, must be either of such a broad character as to establish mental incapacity generally, or some specific form thereof, by reason of which the testator is the victim of hallucination or delusion. (*Estate of Chevallier*, 159 Cal. 168, [113 Pac. 130]; *Estate of Collins*, 174 Cal. 670, [164 Pac. 1110].) No claim is made that the testator, when he made the will, was subject to delusions; but it is insisted that "the testator was mentally incompetent to execute a will because of the broad and general character of his unsoundness of mind, an unsoundness of mind that first became marked some twenty-five years prior to the execution of the will (when he had a stroke of paralysis), and which grew worse and became more marked from year to year up to the death of the testator."

It appears from the evidence introduced that at the time of his death Peter McGuirk was about sixty-two years of age, unmarried, and without other heirs than his brothers and sisters, all of whom were of mature age. All of the witnesses testified that in their opinion deceased was, at the time when he made the will, of unsound mind. The facts upon which such persons based their conclusions, and without which their opinions could in no event be of any weight (*Estate of Dole*, 147 Cal. 190, [81 Pac. 534]), are that in 1894 testator had a stroke of paralysis, prior to which time he was an active man, both mentally and physically; that as a result of such affliction his physical condition was impaired, and thence to the time of his death, a marked change was noted in his disposition and conduct toward other persons, including his mother, toward whom he used abusive language, and on one or two occasions, during altercations, tried to strike her with a cane or poker; that on one occasion, while camping in the mountains, he was partaking of a meal consisting of macaroni and beans among which were worms and maggots. While physically unable to dress or care for himself without assistance, he, in 1910, put in a bid for a contract to carry the mail, and in 1912

ran for supervisor. He frequently stated his neighbors were trying to rob him, and both the living and the dead were made the subject of his curses. In conversation he would change from one subject to another, and frequently, for considerable periods of time, would engage in talking to himself, acted indecently in the presence of ladies, and once or twice mistook a niece for her cousin. In talking about his land, he, in the opinion of the witness, placed an exorbitant value thereon. No attempt was apparently made to show the time to which in their testimony the witnesses referred with relation to the time of making the will. His conduct from which the witnesses concluded that he was of unsound mind covered a period of twenty years, and the evidence is to the effect that deceased grew worse mentally and physically from the time he had the stroke to the time of his death, some twenty-five years later. Andrew McGuirk, a brother of deceased, testified that he was led to believe that testator was of unsound mind because he refused to buy a piece of land which his mother advised him to purchase and in failing to do so he made a mistake; that he abused his brother and applied vile epithets to him, both before and after he was paralyzed, but did not abuse him as much before the affliction as he did afterward. The deceased for several years prior to his death lived at the house of the contestee, and she nursed, cared for, and assisted him in the transaction of his business, and doing such things which by reason of his physical infirmity he could not readily do for himself. He kept a bank account and frequently drew checks thereon; and for some four years prior to his death, transacted business with the contestant as a lessee of his land, which she occupied as a tenant, and to whom he executed a contract or option to buy the same. As stated, the will was in his own handwriting, but copied from one prepared by his attorney under his instructions and to whom he said he wanted it worded so as to carry out his intentions and so there would be no technicality upon which they could break it.

The foregoing constitutes a fair statement of the evidence most favorable to contestant, and the question presented thereon is whether it was such as to have demanded of the trial court that it deny the motion for nonsuit and submit the question to the determination of the jury.

[2]  That the testator was unmindful of the presence of ladies when engaged in his duties to nature, used intemperate and profane language on all occasions, was eccentric and said and did things inconsistent with what might be deemed conventional rules, may be readily conceded. Nevertheless, and assuming further that his conduct justified the inference that his mental faculties were impaired and weakened to an extent which warranted the conclusion, as stated by witnesses, that he was of unsound mind, there is nothing in the evidence which tends, either directly or inferentially, to prove that his testamentary act was in the slightest degree influenced or affected by the condition of mind which prompted him to say and do things upon which the witnesses based their opinion. "The rule of law is not that no person who is insane may make a valid will, but that the will of no person who, by reason of insanity, is incapable of making valid testamentary disposition shall be upheld." (*Estate of Chevallier,* 159 Cal. 168, [113 Pac. 130].) Under the circumstances, and due to the fact that the testator had, for years preceding the making of the will, made his home at the house of the contestee, who had during such time looked after his wants and cared for him when occasion demanded it, and assisted him in the transaction of his business affairs and the handling of his property, the value of which appears not to exceed eight thousand five hundred dollars, it was most natural that he should make her the recipient of his bounty. The facts herein are quite similar to those involved in *Estate of Collins,* 174 Cal. 663, [164 Pac. 1110], wherein the will of the deceased in that case was attacked, as here, upon the contention that decedent was not of sound and disposing mind at the time of the execution of the will. The appeal therein was from an order revoking the probate of the will, and upon a review of the evidence, which was much stronger in favor of the contestant than that here presented, the supreme court reversed the order.

The judgment is affirmed.

Conrey, P. J., and James, J., concurred.