[Sac. No. 2021.  Department One.—January 16, 1913.]

In the Matter of the Estate of GEORGE F. PACKER, Deceased. OLIVE SAMPSON, et al., Contestants and Appellants, v. E .M. GORDON, et al., Proponents and Respondents.

WILL—REVOCATION OF PROBATE—MENTAL INCOMPETENCY—UNDUE INFLUENCE—FRAUD—NONSUIT—EVIDENCE.—In a proceeding to revoke the probate of a will on the grounds of undue influence and fraud, and for the alleged mental incompetency of the testator, in which a motion for nonsuit was granted at the close of the contestant's case, it is held, that the evidence was insufficient to establish either of such grounds of contest, or to warrant the submission of the question to the jury.

ID.—ELEMENTS NECESSARY TO UNDUE INFLUENCE.—Nothing less than pressure so acting on a testator as to destroy his free agency is sufficient to constitute undue influence.

ID.—PRESUMPTION OF UNDUE INFLUENCE—PROVISION FOR PERSON OCCUPYING FIDUCIARY RELATION.—No presumption that a testator was unduly influenced arises from the mere fact that the will makes provision for one occupying a fiduciary relation to him. ` There must, in addition, be at least a showing that the person so benefited had some part in the making of the will.

ID.—HOSTILITY TO CONTESTANTS.—Conceding that the contestants were entitled to show that the persons charged with exercising undue influence entertained feelings of hostility toward them, such evidence could not have availed.to make a case sufficient to go to the jury in the absence of anything tending to prove that undue influence had in fact been exercised.

ID.—MENTAL INCOMPETENCY—TESTATOR OF ADVANCED YEARS—FAILING EYESIGHT.—The fact that a testator was of advanced years and that his eyesight was failing, is not sufficient evidence of mental incompetency to justify setting aside his will.

ID.—UNNATURAL OR UNJUST WILL.—A jury is not authorized to overturn a will merely because its dispositions do not conform to the jurors' notions of justice or propriety. The will in question is held to be neither unnatural nor unjust.

ID.—FAILING MEMORY OF TESTATOR.—Evidence that a testator's memory was somewhat weakened, without any showing of impairment of his ability to grasp salient facts in relation to his property, its situation, and the objects of his bounty is not sufficient proof of want of testamentary capacity.

EVIDENCE—LETTERS USED BY WITNESS TO REFRESH MEMORY—PARTY CALLING WITNESS CANNOT INTRODUCE IN EVIDENCE.—Under section 2047 of the Code of Civil Procedure, a party calling a witness has no right to treat as evidence, by reading, or showing, or handing to the jury, letters written by the witness, and used to refresh the witness' recollection.

ID.—ERROR CURED BY SUBSEQUENT TESTIMONY.—Any error in refusing to permit a witness for the contestants to answer the question whether she had ever heard the wife of the testator say anything to her husband about doing anything for one of the contestants, is rendered harmless, if the witness subsequently testifies that she never heard any such conversation.

APPEAL from a judgment of the Superior Court of Colusa County. H. M. Albery, Judge.

The facts are stated in the opinion of the court.

Arthur C. Huston, and Seth Millington, for Appellants.

Thomas Rutledge, White, Miller & McLaughlin, and Seymour & Yell, for Respondents.

SLOSS, J.—On February 15, 1910, the superior court of the county of Colusa admitted to probate an instrument purporting to be the last will of George F. Packer. The appellants, children of deceased brothers and sisters of said George F. Packer, filed a petition for revocation of the probate of said will. The grounds upon which revocation was asked were that the document was not executed by George F. Packer in the manner required for the execution of wills; that the decedent was not of sound mind at the time of executing the alleged will and that the execution was induced by undue influence and fraud. The proponents having answered denying the material allegations of the petition with respect to each of these grounds the matter came on for trial before a jury. At the close of the contestants' case the proponents moved for a nonsuit on the ground that no evidence in support of any of the causes of contest had been introduced. The motion was granted and judgment of dismissal entered. The contestants appeal from the judgment.

The alleged will bore date the twenty-seventh day of April, 1907, some two years before Packer's death. By its terms,

the decedent bequeathed five hundred dollars to his niece, Mary Glenning, a like sum to his sister, Jane Packer, a steam harvester to George H. Gordon, and the residue of his estate in equal shares to Edward M. Gordon and the decedent's nephew, Albert M. Packer. George F. Packer was a farmer owning a large ranch and other property in Colusa County, where he had resided for many years. At the date of the will he was of the age of eight-eight years. He was married, but had never had any children. His wife, Hannah Packer, was alive when the instrument in controversy was signed. She died on March 20, 1908, during Packer's lifetime. The only other persons who would, at the date of the will, have been entitled to succeed to his estate as heirs, were his sister, Jane Packer, and children of deceased brothers and sisters, such children including Albert M. Packer and the contestants.

There was no attempt to offer any evidence in support of the averment that the paper had not been executed in due form. Nor does the record contain any evidence tending to show the exercise of undue influence or the commission of fraud. There is a total want of testimony which would justify an inference that any of the beneficiaries, or their wives, or the wife of the decedent (the persons named in the petition for revocation as having exercised undue influence and made fraudulent representations), undertook to influence the testator in any manner whatever. So far as the evidence shows, the will was the product of George F. Packer's free and independent volition. Certainly there is nothing to indicate that he acted under pressure which destroyed his free agency. Nothing less than this is undue influence. (*In re Kaufman,* 117 Cal. 288, [59 Am. St. Rep. 179, 49 Pac. 192] ; *Estate of Ricks,* 160 Cal. 459 [117 Pac. 532] ; *Estate of Morcel,* 162 Cal. 188, [121 Pac. 733].)

It is argued that there was a confidential relation between the decedent and Albert M. Packer, and that this threw upon the latter, benefiting by the will, the' burden of disproving undue influence. But no presumption that the testator was unduly influenced arises from the mere fact that the will makes provision for one occupying a fiduciary relation to him. There must, in addition, be at least a showing that the person so benefited had some part in the making of the will.

(*Estate of Higgins,* 156 Cal. 257, [104 Pac. 6].)    The appellants assert in their brief that Albert M. Packer was present when this will was executed.    But the record does not bear them out.    All that was testified to was that he was in the house when E. M. Gordon entered after the will had been executed.    This is clearly insufficient to raise a presumption of undue influence.

Of the issue of fraud nothing more need be said than that evidence to sustain the allegations of the petition is not to be found in the transcript.

The testimony regarding mental incomptency was not such as to have justified the submission of the question to the jury. George F. Packer was a man of advanced years.    His sight was failing.    But these circumstances alone are not sufficient to justify the court or a jury in setting aside a will. (*Estate of Dole,* 147 Cal. 188, [81 Pac. 534] ; *Estate of Motz,* 136 Cal. 558, [69 Pac. 294].)    After giving to the contestants the benefit of every favorable interpretation and inference which the testimony can reasonably bear, as we are bound to do on this appeal (*Estate of Arnold,* 147 Cal. 583, [82 Pac. 252]), we are still forced to the conclusion that nothing substantially tending to show a lack of mental capacity to make a will was produced.    Stress is laid upon what is called the "unnatural" character of the will.    It can hardly be necessary to repeat that a jury is not authorized to overturn a will merely because its dispositions do not conform to the jurors' notions of justice or propriety.    "It is well to remember that one has a right to make an unjust will, an unreasonable will, or even a cruel will."    (*Estate of McDevitt,* 95 Cal. 33, [30 Pac. 101].)    But in fact it cannot truthfully be said that the will before us is either unnatural or unjust.    The principal beneficiaries are the persons who were (except for his wife) closest to the testator, who enjoyed his confidence and assisted him in the management of his affairs.    One of them, Albert Packer, was his nephew. The other, Edward M. Gordon, had been taken into the testator's family as a mere child, and had lived upon the Packer property, and been treated virtually as a son of George and Hannah Packer all his life.    The contesting nephews and nieces did not live near the Packers, and the relations between them and testator were not particularly intimate.    Much is

made of the failure of the testator to provide for his wife. This is a somewhat strange criticism, in view of the fact that the wife herself is named in the contest as one of the parties exerting undue influence. But, apart from this, the omission to give anything to the wife is not surprising when we note that she was, at the date of the will, suffering from a disease which was believed to be incurable. Indeed, the appellants themselves, in their petition, allege that at the date of the will she was so afflicted, "and that both she and the said George F. Packer knew that she could not recover."

There was no testimony by either expert witnesses or intimate acquaintances, that in their opinion George F. Packer was not of sound mind. One of appellants' witnesses testified that the decedent's health had been failing for some years, but that his mind, so far as she knew, was strong. One witness, who had worked for Packer as a farm hand, stated that his employer "appeared irrational," but based this statement upon grounds which wholly fail to support the conclusion. One of the circumstances mentioned was that Packer would ask the witness his name and what he was doing, and then, on meeting him another day, would repeat the same questions. Again, that Packer often spoke of things that had occurred many years before, while he was living in Pennsylvania. That the testator would walk around the table where the hired men were eating, and go out without saying anything. Another witness testified that in 1907, he saw Packer set fire to some fox-tails along the road, that he observed that a fence post was on fire, and went to put the fire out, whereupon Mr. Packer said he was old enough to watch his own affairs. At the time of the incident, Packer "appeared" to this witness, too, to be irrational. The facts testified to by the two witnesses just mentioned are too trivial to deserve extended comment. It must be apparent that they can furnish no support for a conclusion that the testator did not possess the mental capacity required for the making of a will. The only circumstance having any bearing on the matter of mental soundness is the repetition of questions that had already been asked and answered. It had a tendency to show that Packer's memory was somewhat weakened. But this, without any showing of impairment of his ability to grasp the salient facts in relation to his property, its

situation, and the objects of his bounty, would not suffice as proof of want of testamentary capacity. (*Estate of Dole,* 147 Cal. 188, [81 Pac. 534].) Taking the case as a whole, it may fairly be said that the evidence in support of the allegation of unsoundness of mind is decidedly weaker than that presented in various cases in which this court has, as matter of law, held the proof offered to have been insufficient.

We think no material error was committed in ruling upon the admission and exclusion of testimony. The appellants offered the deposition of Henria Compton, a niece of decedent. The deposition was taken in June, 1911. In 1909 Mrs. Compton had written letters to relatives, in which she made certain declarations concerning the decedent and other members of his family. The appellants sought to get these letters before the jury upon the plea that they could be used to refresh the recollection of the witnesses. The court declined to permit them to be read. We are satisfied that it was right in so ruling. Even if it be assumed that the circumstances were such as to authorize the use of the letters to refresh the witness' recollection (Code Civ. Proc., sec. 2047), the party calling her was not thereby authorized to put the papers before the jury. Such a paper is "in no sense testimony. . . . . The opponent, but not the offering party, has a right to have the jury see it. . . . That the offering party has not the right to treat it as evidence, by reading it or showing it or handing it to the jury, is well established." (1 Wigmore on Evidence, sec. 763.) And such seems to be the fair construction of section 2047 of the Code of Civil Procedure, which expressly declares the right of the *adverse party* to read the writing to the jury. (*Reid* v. *Reid,* 73 Cal. 206, 208, [14 Pac. 781].) To permit this to be done by the party producing the witness would open the door to the admission of hearsay and manufactured evidence without limit. For like reasons, it was proper to exclude questions in which counsel for appellants, after reading a passage from one of the letters, asked the witness what she meant by the declaration quoted, or based other inquiries upon such passage.

Some other rulings are criticised, but we think none of them, if erroneous, was of sufficient importance to justify a reversal. If it be conceded that appellants were entitled

to show that the persons charged with exercising undue influence entertained feelings of hostility toward the contesting relatives, such evidence could not have availed to make a case sufficient to go to the jury in the absence of anything tending to prove that undue influence had in fact been exercised.   Besides, while some questions on this line were excluded, others were permitted to be answered, and the appellants had the benefit of everything of consequence that could have been brought out if the rulings on the earlier questions had been as appellants contend they should have been.   Many other questions on this line called for conclusions or opinions, rather than facts, and were properly ruled out for this reason.

The witness Henria Compton was asked whether she had ever heard Hannah Packer ''say anything to her husband about doing anything for Jane Packer.''   An objection was sustained.   If the ruling was erroneous (see *Estate of Snowball*, 157 Cal. 301, 309, [107 Pac. 598]) the error was harmless, since it appears that the witness subsequently testified that she had never heard any conversation between George Packer and his wife ''in regard to doing anything for Jane Packer.''

The appellants urge that the court erred in excluding testimony tending to show that the testator, before and after making his will, had made gifts of property to E. M. Gordon and Albert Packer.   We need not pass on the admissibility of this testimony.   If it had been admitted, it could not have strengthened the appellants' case to such an extent as to justify the submission of the issue to the jury.

The judgment is affirmed.

Shaw, J., and Angellotti, J., concurred.