NASHVILLE, C. & ST. L. RY. *v.* TENNESSEE MILL CO. *et al.*

(*Nashville.* December Term, 1920.)

1. **LIMITATION OF ACTIONS.** Accounts held "mutual," though agreement for credit was illegal.

Where a shipper, having a large volume of business and many claims pending against a railway company for overcharges and for loss and damage to shipments, made an arrangement under which the railway company extended credit on account of freight charges for amounts in proportion to the claims pending, the accounts between the parties were mutual within Thompson-Shannon Code, section 4475, and limitations did not run until the date of the last item, even though the agreement was illegal under Act Cong. Feb. 19, 1903, section 1, as amended by Act June 29, 1906, section 2 (U. S. Comp. St. section 8597). (*Post, pp.* 240, 241.)

Case cited and approved: Hocking Valley Ry. Co. v. U. S., 210 Fed., 735.

Code cited and construed: Sec. 4475 (T.-S.).

2. **LIMITATION OF ACTIONS.** Party estopped to plead limitations on theory that extension agreement solicited by him was invalid.

Where a shipper solicited an extension of credit for freight charges based on the amount of claims in its favor against the railway company for overcharges, etc., and accepted the benefit of such credit and from time to time pleaded for its continuation, it was estopped to plead the statute of limitations on the theory that the agreement was illegal and did not suspend the right of action. (*Post, pp.* 241, 242.)

Cases cited and approved: Lengar v. Hazelwood, 79 Tenn., 539; Phillips v. Phillips, 163 Cal., 530; Princeton, etc., Turnpike Co. v. Gulick, 14 N. J. Law, 545.

3. **CARRIERS.** In action for freight, defendant may offset claims for overcharges and for loss and damages to shipments.

N., C. & St. L. Ry. v. Tennessee Mill Co.

In an action for freight charges, the shipper is not precluded from offsetting claims against plaintiff for overcharges and for loss and damage to shipments by the possibility that the parties might evade the Interstate Commerce Act by a collusive settlement of the offset. (*Post, pp.* 242-246.)

Cases cited and approved: Chicago & N. W. Ry. Co. v. Stein, (D. C.) 233 Fed., 716; Illinois Central R. Co. v. Hoopes & Son, (D. C.), 233 Fed., 135; Louisville, etc., Ry. Co. v. Mottley, 219 U. S., 467.

Cases cited and distinguished: Johnson-Brown Co. v. Delaware, L. & W. Co. (D. C.), 239 Fed., 590; Wells Fargo & Co. v. Cuneo (D. C.), 241 Fed., 727; Chicago & N. W. R. Co. v. Tecktonius Mfg. Co. (D. C.), 262 Fed., 715.

---

### FROM FRANKLIN.

---

Appeal from the Chancery Court of Franklin County.— Hon. R. W. Smartt, Chancellor.

Floyd Estill, W. B. Lamb and Embry & Stewart, for appellants.

H. M. Templeton, Totum, Thach & Lynch and Whitaker & Foust, for appellee.

Mr. Justice Green delivered the opinion of the Court.

This suit was brought by the complainant railway company to recover balance of freight charges due from defendant R. J. Riddle. Defendant interposed the statute of limitations to most of the demand and also filed a cross-

bill seeking to offset claims of his against the railway company for overcharges and for loss and damage to shipments.

The chancellor gave to the complainant a decree for the balance of freight charges due it, overruled the defendant's plea of the statute of limitations, and held that defendant was not entitled to offset his claims against the railway company. The defendant has appealed from this decree.

The defendant was the owner of a large flouring mill at Estill Springs, Tenn., on the line of complainant railway. He did quite a volume of business, receiving much grain and shipping large quantities of flour and meal.

Defendant, in respect to his business with the railway company, was accorded the familiar milling in transit rates at that time permitted by the Interstate Commerce Commission. It was the custom of defendant to make monthly settlements with the railway company.

In the fall of 1908 the defendant procured an arrangement with the railway company whereby credit was to be extended to him on this basis. The defendant, being a large shipper, at all times had on file with the railway company many claims for overcharge on freight, and for loss and damage to shipments. Instead of settling the railway's claims against him monthly, he got the railway company to agree that it would carry these claims against him to the amount of $5,000 as long as his claims against the railway company ran between $5,000 and $10,000, and when defendant's claims against the railway exceeded $10,000 it agreed to extend to him a credit of 50 per cent.

of the amount of said claims. The parties worked under this agreement for several years. Upon the bringing of this suit by the railway company, the defendant Riddle insisted that the foregoing contract between him and the railway was invalid as an unlawful concession or discrimination within Elkins Act Feb. 19, 1903, chapter 708, section 1, 32 Stat. 847, amended by Act June 29, 1906, chapter 3591, section 2, 34 Stat. 587 (U. S. Comp. Stat. Supp. 1911, p. 1311 [U. S. Comp. St. section 8597]), that it at no time prevented the railway from suing for its freight charges and he accordingly pleaded the six-year statute of limitations. With the exception of a small item the amount of charges sued for by the railway accrued more than six years prior to this suit against Riddle.

The chancellor held that the statute of limitations was not available to the defendant, and we think he was right.

We are inclined to the opinion that the contract for this indefinite extension of credit to the defendant was unlawful under the acts of Congress referred to. Such a conclusion respecting a contract for credit, hardly so objectionable in its terms, was reached by the circuit court of appeals for this circuit in *Hocking Valley Ry. Co. v. U. S.*, 210 Fed., 735, 127 C. C. A., 285. In that case Judge DENISON carefully distinguished the cases which the complainant here relies on to support the validity of this contract.

Notwithstanding the said contract in our opinion was invalid and did not prevent the complainant at any time from suing for its freight charges, it does not follow that the statute of limitations is now available to the defendant.

The illegality of the agreement for delay between the parties in no way affected the mutuality of their accounts. The credit extended by the railway company was based on the claims filed against it by the complainant. This credit was to be indefinitely enjoyed as long as claims were on file in the stipulated proportion, and really amounted to an agreement to offset mutual claims as far as it went.

In the ordinary case of mutual demands either party may sue at any time, subject to the set-off of the other party. The circumstance that the agreement between the railway and the defendant did not prevent the railway from suing is therefore of no weight in determining whether the accounts of the parties were mutual.

Having concluded that these accounts were mutual according to the course of dealing between the complainant and defendant, it follows that the statute of limitations began to run from the date of the last item in such accounts. Thompson's Shannon's Code, section 4475. The last items of both accounts were within six years of the bringing of this suit.

Aside from the section of the Code quoted, we think that an equitable estoppel may be invoked here to prevent a plea of set-off by the defendant. *Lengar* v. *Hazlewood*, 11 Lea, 539.

This contract for an extension of credit was obtained at the solicitation of the defendant. The defendant accepted the benefit of the contract, pleading for its continuation from time to time when the complainant threatened to collect its charges, and at one time, within the statute,

143 Tenn.—16

defendant virtually made his promise to settle if he was granted some further extension. Having procured this contract for his own benefit and all the while enjoyed such benefit, the defendant should not now be heard to insist that the contract is invalid and base a plea of the statute of limitations on such a ground. *Phillips* v. *Phillips,* 164 Cal., 530, 127 Pac., 347.

Furthermore, by his cross-bill herein the defendant is asserting many claims barred by the statute of limitations. It has been held that, if a defendant gives in evidence stale demands on his part and insists upon their being allowed, he shall not at the same time set up the statute of limitations against similar demands on the part of the plaintiff. *Princeton, etc., Turnpike Co.* v. *Gulick,* 14 N. J. Law, 545.

For the reasons stated, we agree with the chancellor that defendant is not entitled to rely on the statute of limitations herein.

The chancellor, however, held that defendant was not entitled to offset his claims against the railway company, as we have previously noted, and in this we think his honor was in error.

The chancellor's decree was apparently based on *Chicago & N. W. Ry. Co.* v. *Stein* (D. C.), 233 Fed., 716, and *Illinois Central R. Co.* v. *Hoopes & Son* (D. C.), 233 Fed., 135, in which it was held that a shipper sued for freight charges could not offset his claim for damages to the shipment. The same thing was later held in *Johnson-Brown Co.* v. *Delaware, L. & W. Co.* (D. C.), 239 Fed., 590.

These cases proceeded on the idea that—

If a shipper was permitted to set off his claim for damages in an action by the carrier for freight, "the court must prevent the usual right to make compromises of such suits, and must undertake the impossible task of holding the carrier to diligence in good faith in preparing and presenting its defenses, in order to prevent the granting and receiving of rebates by insidious agreement between the parties with reference to the disposition of the suit.

"The public policy evinced by the acts of Congress relating to Interstate Commerce requires the denial of the right to set off in such cases, leaving the shippers an independent action to enforce any rights that belong to them." *Chicago & N. W. R. Co.* v. *Stein, supra.*

This reasoning does not seem very convincing, and these cases have been disapproved. All the decisions of which we are aware so far have been by district courts of the United States. The cases above mentioned were pressed upon Judge MAYER in *Wells Fargo & Co.* v. *Cuneo* (D. C.) 241 Fed., 727, and he said:

"In support of the demurrer, plaintiff cites *Illinois Central R. Co.* v. *W. L. Hoopes & Sons et al.* (D. C.) 233 Fed. 135, and *Chicago & N. W. Ry. Co.* v. *Stein Co.* (D. C.), 233 Fed., 716. I regret that I am unable to follow these cases, and it may be pointed out in passing that I. C. C. Conference Ruling No. 48, referred to in the *Hoopes Case, supra,* has been withdrawn since that decision.

"That defendant would have the right to begin an independent action to recover for damages to the shipment

cannot be denied. It may well be that the parties cannot compromise out of court, but I need not pass on that question. It must be assumed that, when litigants come into a court, they are submitting a real controversy for determination, not by themselves, but by and before a tribunal created and organized for that purpose. It cannot be presumed that the parties will deceive the court, and thus subject themselves to serious consequences, nor that they will compromise the litigation as a mere device to evade the Interstate Commerce Act, and thereby subject themselves to its penalties.

"The provisions of the act in question were never intended to deprive a shipper or consignee of his lawful remedies against the carrier for such breaches or wrongful acts as the carrier may have committed. The policy of the law is to settle germane disputes in one litigation, and this counterclaim fully accords with the New York practice in that regard. When the carrier has found a defendant in one jurisdiction and has brought its action there, it would be most unjust to force such a defendant to go to another jurisdiction to assert his rights and claims in an independent action; and if, on the other hand, both parties are in the same jurisdiction, it would be the height of absurdity to require two actions to be brought where the controversy could be disposed of in one. Obviously, if the parties intended to evade the statute by an unlawful compromise, they could do it as easily by the medium of two lawsuits as they could in one.

"So that really what the contention comes down to is that the shipper would be deprived of his rights; for, if the right to counterclaim for damages is denied to him, I cannot appreciate any theory on which he could be permitted to assert precisely the same claim for damages in an independent lawsuit. Indeed, such a construction as plaintiff here urges would give to carriers, under some circumstances, an undue advantage, and might readily work an injustice upon shippers and consignees never contemplated by the statute."

In *Chicago & N. W. R. Co.* v. *Tecktonius Mfg. Co.* (D. C.), 262 Fed., 715, these cases were disapproved by Judge GEIGER, who held that the shipper's counterclaim was permissible in the following language:

"Of course, as indicated, if, in an action by the carrier for the charges, a shipper cannot counterclaim for a cause of action ordinarily pleadable as such, then, as a corollary, in an action by the shipper, the carrier should not be permitted to counterclaim on a cause of action for tariff charges. This must be so if, as a basis of the proposition, there be the asserted necessity of eliminating all opportunity to collude or compromise, or to set off liabilities in contravention of the duty to collect tariffs in money. Now, when the matter is thus viewed, we appreciate that there is no ground for differentiating one suit brought by either party, wherein the other counterclaims, from distinct and separate suits by each against the other; the one furnishing, the other excluding, inherently, occasion for or possibility of compromising, colluding, or in fact setting off. Indeed, when we consider litigation as a cover or device

for accomplishing any one of these objects, the latter means might prove far more effective. Therefore, if the prohibited object may be accomplished as well in the latter as in former situation, its possibility is not relevant as a basis for the conclusion that in the one, and not the other, the procedural right must be denied. Plainly there is no ground for treating suits by one wherein the other counterclaims as presumptively collusive; and the mere circumstance that it may result procedurally in setting off the amount due or awarded to the other, thus leaving a balance to be compulsorily satisfied, will not, in my judgment, *prima facie* or otherwise (unless actual fraud or collusion be proved), violate the principle announced in *Louisville, etc., Ry. Co.* v. *Mottley,* 219 U. S., 467, 31 Sup. Ct., 265, 55 L. Ed., 297, 34 L. R. A. (N. S.), 671."

The reasoning of the last two cases seems better to us, and we prefer to follow these cases there being no decision from higher federal courts.

The chancellor really disposed of the defendant's cross-bill as if on demurrer, holding the cross-bill insufficient in law. We disagree with him about this.

We think that the statute of limitations is not available to either party in this case, but that the defendant is entitled to offset against the complainant's demands claims of his for overcharge, loss, and damage, etc., which he may prove.

The case is accordingly remanded for further proceedings. The costs of this court will be divided, and the costs of the court below will be adjudged by the chancellor.