[Crim. No. 1057. Third Appellate District.—December 27, 1928.]

THE PEOPLE, Respondent, v. C. E. WEAVER, Appellant.

4

Theodore E. Bowen, E. Fitzgerald and J. Edward Keating for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—Defendant was charged by information in the superior court of El Dorado County with the crime defined in section 476a of the Penal Code, in that, on the tenth day of October, 1925, he did (now quoting from the information) "wilfully, unlawfully, fraudulently, and with intent to defraud one Tim Haw, make, utter, draw and deliver to said Tim Haw a certain check and draft on a bank and depositary for the payment of money, to-wit: The Placerville National Bank, which said check and draft was in words and figures following, to-wit: 'Placerville, Calif. Oct. 10, 1925. No. 78. The Placerville National Bank 90–971. Pay to the order of Tim Haw $50.00, Fifty and no/100 Dollars. C. E. Weaver.'" He was convicted by the jury of said offense. He moved for a new trial, but the motion was denied. He appeals from the judgment of conviction and the order denying his motion for a trial *de novo*.

The appeals are sought to be supported upon the claim that the evidence is insufficient to have justified his conviction and that error was committed in rulings admitting and excluding certain testimony and in the action of the trial court in the giving and the refusal to give certain instructions.

1. There is no merit in the contention that the record does not disclose evidence sufficient to support the verdict. The fact that the defendant issued the check or draft as alleged in the information and the further fact that, when issuing and delivering the document to Haw, he had no funds in or credit with the bank upon which it was drawn to meet or satisfy said check stand in the record wholly undisputed. He, however, claimed at the trial, and undertook to sustain that claim by his own testimony alone, that, because of being ill on the day he issued the check, and of the effect of such illness upon his mind, he knew and remembered nothing of many of the acts he did on that day,

and had no recollection of issuing and delivering to Haw the check in question. His illness on said day, he stated, proved, as it progressed, to be typhoid fever, from which he suffered and for which he was required to remain in a hospital in the city of San Francisco under medical treatment for a period of two or more months. But this phase of the case need not be given herein extended consideration, since it was a matter solely for the jury's determination. The verdict conclusively shows that the jury refused to accept the defendant's story of mental aberration on the day and at the time in question, and we, in turn, must accept the jury's conclusion in that respect. It will, though, conduce to a clearer understanding of the situation as it was created by the several transactions with which the offense charged in the information was more or less connected if the facts be in a general way stated. The defendant had, for a period of time prior to the tenth day of October, 1925, been associated (for a time as a partner and then as superintendent of the mine) with another party in prosecuting operations in a certain mine situated not far distant from Placerville. During that period of time he occupied, whenever remaining overnight in Placerville, a sleeping-room in a rooming-house conducted by said Haw in that city. At some time of the afternoon of said tenth day of October, he appeared at said rooming-house and, meeting Haw, handed to the latter a bar of gold bullion to keep for him until he later called for it. It appears that he was indebted to Haw in quite a sum, and that, between 6 and 7 of the evening of the day just mentioned, he returned to the rooming-house and, meeting Haw on the outside of and near said house, stated to the latter that he desired to pay him (Haw) a sum of money to be credited on his indebtedness to Haw. Thereupon the two entered the house and the defendant then prepared and signed the check which forms the basis of the information herein, and delivered the paper to Haw, who thereupon returned the bar of bullion to the defendant. It may here be stated that the accused testified that he had no recollection of the circumstance of the return of the bullion to him either by Haw or his wife, to whom (the wife), instead of Haw himself, he thought he had delivered the bar on the 10th of October. No trace of the bullion was ever discovered and, so far as

the record here advises us, no one actually knew or knows what finally became of it.

█ It further appears that, on the same day (October 10th), the defendant issued five other checks and another on the following day (October 11th) in favor of as many other different persons residing in and about Placerville, and delivered the same to the parties in whose favor, respectively, they were drawn. All the checks, save and except one which was drawn in favor of and delivered to one Max Baer for the sum of $45.00, were drawn on the Placerville National Bank, in which the accused had never at any time had any funds and with which he never at any time had any credit. In fact, the officers of said bank had no acquaintance whatever with the defendant. The check issued and delivered by defendant to Baer was drawn on the El Dorado County Bank, located at Placerville, in which the defendant had on deposit the sum of $3.12 only and with which, as seen, he had no credit. All the checks with the exception of two, of which that issued and delivered to Haw was one, were postdated, viz.: "Oct. 10, 1926." All the checks were introduced in evidence in the order in which the testimony of those to whom, respectively, they were issued and delivered was given at the trial. The checks called for sums varying in amount from $5 to $50, and the total amount thereof was the sum of $225.50. The defendant was allowed to prove that he took up or paid all but one of the checks a day or two prior to the date of the trial. The fact, though, that he did so, if the court had deemed it, in view of the circumstances of the case, proper for that purpose, might have been considered as in mitigation of the punishment to be imposed, or upon the question of admission of the accused to probation, but it obviously in no measure or degree relieved the acts of the defendant in issuing the checks of their criminality within the purview of section 476a of the Penal Code.

█ As first above stated, as to the fact that the defendant issued and delivered to Haw the check upon which the information is founded and as to the fact that he had in or with the bank upon which it was drawn neither funds nor credit with which to meet the same were not and are not controverted. There is no ground for any doubt that there is sufficient evidence to support the implied finding of the jury that the accused issued and delivered the check

to Haw knowing at the time that he had no funds in or credit with said bank with which the check could or might be satisfied or met, and that he so issued and delivered said check with the intent to defraud Haw. Thus a complete offense under the section of the Penal Code upon which the information is based was made out.

2. The defendant objected to the introduction of the Haw check in evidence on the ground that it was not the check pleaded in the information. The objection was over-ruled. A photostatic copy of the check appears in the transcript. The question thus raised and presented involves two points, viz.: 1. That the check received in evidence as in proof of the crime charged not being the check set forth in the information, the verdict, therefore, is without suffi-cient evidentiary support to uphold it; 2. That there is thus created a material variance, fatal to the judgment of conviction, between the pleading and proof. The variance claimed arises from the fact that in the blank space for the designation of the year of the issuance of the check in the printed form of check used by the defendant for the prepara-tion of the check, the final numeral or figure seems first to have been a "5," which, obviously, would make the date of the check, even with the date of its issuance, viz., "1925," and that (as also appears to be the fact) the writer of the check then attempted to change the date thereof, so far as the year was concerned, by substituting for and writing over the figure "5" the figure "6," thereby making the check bear the date "Oct. 10, 1926." The conclusion that the date line of the check was first made to read "1925," and thereafter changed to "1926," is based upon the opinion of the writer of this opinion, formed from such an inspection of the date line of the paper as the limited means of a non-expert for the investigation of such matters will permit; but it is not at all impossible that an expert in the deciphering of hieroglyphical confusions, with the aid of instruments suitable to such purpose, might conclude that the figure "6" was first written and then an attempt made to substitute the figure "5" therefor, in the manner above indicated. In any event, however, the question was one for the jury to deter-mine. But the point as to the variance is of no ma-terial importance, in so far as is concerned the statement of the crime denounced by section 476a of the Penal Code. In other words, the gist of the offense defined in said section

is entirely in the giving to another, with intent to defraud, any check or draft on a bank, banker, or depositary for the payment of money, by a party who knew at the time that he had not sufficient funds in or credit with such bank, etc., to meet such check or draft in full upon its presentation, the date of the check being, therefore, no element or ingredient of said offense. (*People* v. *Bercovitz*, 163 Cal. 636, 638 [43 L. R. A. (N. S.) 667, 126 Pac. 479].) This proposition, though, is not combatted by counsel for the defendant.

▪ The point that they make is that the variance is such that the defendant would be without legal protection against any future prosecution which might be inaugurated and pressed against him for the same offense. The evidence leaves no ground for doubting that the check delivered to Haw, and as set forth in the information was the check received in evidence. Haw testified that he delivered the check on the day he received it to a Judge Shanklin. When shown the check as he was testifying, Haw stated that it was the check the defendant gave him on the tenth day of October, 1925; that he had not seen the check after handing it to Judge Shanklin until the preliminary examination of the accused on the charge stated in the information, held a short time before the trial and over two years after the check was delivered to him by the defendant. In the course of his examination he also stated that he "presumed" that the check shown to him while he was testifying for the People was the check he received from the defendant. There was no testimony that the defendant delivered to Haw any other check on the tenth day of October or at any other time. Indeed, no attempt was made to show that any other check was issued and delivered to Haw by the accused at any time. As has been shown, the defendant relied for an acquittal solely upon the single defense interposed by him that, because of illness which affected his mentality, he had no recollection of having delivered any check to Haw. He did not deny that he delivered to Haw the check received in evidence. In the case of *People* v. *Freeman*, 29 Cal. App. 543 [156 Pac. 994], the accused was charged with and convicted of the offense charged against the accused here. In that case the date line of the check set out in the information read: "Brawley, Cal. 3–2 1915." The check, when offered and received in evidence, corresponded in all respects with the copy set out in the information, except that the

figure "1" appeared in the date line, making it read: "3–12 1915," instead of "3–2 1915." The claim on behalf of the defendant there, as here, was that there was as to the check a variance between the allegations of the information and the evidence offered, but an objection on that ground for the defendant was overruled. The court of appeal, upholding the trial court's ruling, said, quoting from *People* v. *Arras*, 89 Cal. 223 [26 Pac. 766]: "A material variance between the proof and information arises when an acquittal of the defendant under the information would be no bar to a further prosecution for the same offense," and, proceeding further, expressed the following views, which are peculiarly applicable to the instant case, in so far as the present consideration is concerned: "As we view the evidence, there could have been no question but that the check offered in evidence was the one by the use of which the crime charged was perpetrated; and we have no doubt at all but that the appellant would not be embarrassed in making proof under a possible subsequent charge made, affecting the same check that he had theretofore been convicted of the crime, and hence had been once in jeopardy. It follows, then, that the variance was immaterial."

The court sustained objections by the district attorney to questions propounded by counsel for defense to Haw, designed to elicit information as to whether the defendant, after returning or being returned to El Dorado County, paid Haw the amount of the check. Even if such testimony was material (and it certainly was not), the error in disallowing it was, subsequent to the rulings complained of in that connection, cured by bringing out practically the same testimony through the questioning of Haw by the district attorney. As seen, Haw stated that, on the day immediately preceding the day on which the trial of this case was opened, the defendant paid him (Haw) all he (defendant) owed him.

The cashier of the Placerville National Bank, upon which the check to Haw was drawn, was, over objection by the defendant, permitted to testify that the defendant, either at the time he delivered the check to Haw, or at any time subsequent thereto, had no funds in or credit with said bank "to meet said check or draft in full upon presentation." The ground upon which objection was made and urged against the acceptance of that testimony was that,

as offered, it was not the best evidence of the fact thus sought to be proved, the argument being that the only competent way in which the fact could be proved would be by the records or books of the bank. The testimony complained of was proper. The testimony was of a negative fact, which, if required to be shown by the records of the bank, might have necessitated the examination of every book or many of the books of the bank. This would of necessity have entailed much loss of time, inconvenience, and trouble. Because of this, the legislature has declared that in such instances in the trial of a case, one of the exceptions to the rule that there can be no evidence of the contents of a writing, other than the writing itself, is "when the original consists of numerous accounts or other documents, which cannot be examined in court without great loss of time, and the evidence sought from them is only the general result of the whole." (Code Civ. Proc., sec. 1855, subd. 5.) In just such a case as this the appellate court in *People* v. *Kawano*, 38 Cal. App. 612, 614 [177 Pac. 174], held, we think properly, that the testimony of the "credit remittance man" of the bank in that case was proper and competent as in proof of the fact that the defendant had no funds in or credit with such bank at the time the defendant drew and delivered the check to the party named therein as the payee, or at any other time. ■ But the defendant here lays particular stress upon the proposition urged by him that the statement by the cashier that he (defendant) had no "credit" with the bank, involved the conclusion of the witness. Conceding the point to be well taken, it remains true that the cashier also stated that he had no acquaintance with the defendant, either before or at the time he delivered the check to Haw, or at any time thereafter, which statement itself constituted testimony sufficient to support the implied finding by the jury that the defendant never had with said bank any credit whatever.

■ There was no error in the ruling sustaining the objection by the district attorney to the question asked the defendant by his counsel as to whether he (defendant) had ever before his attack of typhoid fever been "in a physical or mental condition" which had the effect of causing him "not to remember what occurred." As the learned trial judge stated, when ruling on the objection, the plea of insanity was not interposed by the accused. The claimed

mental lapses of the defendant were, according to his testimony, alone due to a disease of a sporadic nature, one of the characteristics of which is a fever which ofttimes causes cerebral disorder to the extent of producing unconsciousness. The fact that the defendant might, previously to the occasion in question, have been seized with a similar disease or any other sporadic malady which, from the nature of its processes, causes mental disturbances in the patient, would impart no added significance to the fact, if it was a fact, that he was suffering at the time of the transactions involved herein from the mental derangement as claimed by him. Had he set up and undertaken to prove the defense of insanity, the question might have been proper in that the testimony called for thereby might tend to prove at least periodical attacks of insanity.

There are a few other rulings regarding the evidence which are obviously so far removed from any legitimate ground for just criticism that they do not merit special notice herein.

 3. There is no merit in the defendant's objections to the given instructions based on sections 20 and 21 of the Penal Code. The instructions are in the language of those sections. Section 20 reads: "In every crime or public offense there must exist a union or joint operation of act or intent, or *criminal negligence.*" The objection to the instruction embracing the language of that section is that it erroneously assumes that "criminal negligence" was an element in the instant case; that the instruction was misleading for the reason that the crime herein charged involves the element of specific intent and that, "criminal negligence" being wholly foreign to said offense, the jury could gather from the instruction the erroneous impression or notion that if there was no evidence to prove such intent, but that there was some evidence showing that it was through negligence that the defendant delivered the check to Haw, a verdict upon that theory against the accused would be justified in law. The instruction on section 20 of the Penal Code is what may well be termed as a "stock" instruction, like the instruction on the doctrines of reasonable doubt and the presumption of innocence, and given by the trial court in every criminal case, where, as here, specific intent is an essential ingredient of the offense. As to the essentials of the crime herein charged, the court instructed the jury in the language of section 476a of the Penal Code, defining said

crime, and elsewhere in its charge explained to the jury in plain language that one of the essential elements thereof was the intent with which he issued and delivered the check to Haw. No jury composed of persons of common intelligence, on considering all the instructions given as a single charge upon the law, could for an instant suppose that "criminal negligence" was an element of the crime or was a question in the case. Nor is the objection interposed here to the instruction based on section 21 of the Penal Code tenable. The part of the instruction objected to is against the last sentence thereof, which is in the precise language of said section, viz.: "All persons are of sound mind who are neither idiots nor lunatics, nor affected with insanity." As to this, it is complained that the court thus assumed that the defense of insanity was set up. The instruction is another one of those statements which a trial court generally gives to a jury in a criminal case in which a specific intent is an ingredient of the offense, which constitute "stock" instructions. It, like the one first hereinabove considered, involves an abstract statement of a legal proposition, and, as is manifest, simply enumerates generally the class or classes of persons who are, by reason of mental infirmity from some cause, incapable of committing crime. The defendant could not have suffered the least harm to his rights from the instructions, particularly in view of the fact that, while not pleading insanity, he did make the plea that at the time he delivered the check he was unconscious of doing that act by reason of temporary mental sickness.

 The court in effect submitted to the jury the proposition that, assuming that the check was postdated or intended to be postdated so that it would not be ripe for presentation to the bank for payment until October 10, 1926, the burden was upon the defendant to prove that, when he gave the check to Haw, he informed the latter that the check was not subject to presentation for payment until the date mentioned. It is contended by the defendant that in that respect the instruction is erroneous; that, rather than on the defendant, it rested upon the prosecution to show beyond a reasonable doubt that at the time of the delivery of the check no understanding or agreement was had between Haw and the defendant or no information given to the former that the date of presentation was to be postponed to the tenth day of October, 1926. The defendant offered and requested

an instruction in accord with his contention regarding this question but the court rejected it. There is language in some of the cases from which it may be inferred that the intention was to hold that the rule as it was stated by the trial court in its instructions in the present case is correct. (*People* v. *Bercovitz, supra; In re Griffin on Habeas Corpus,* 83 Cal. App. 779 [257 Pac. 458]; *People* v. *Wilkins,* 67 Cal. App. 759 [228 Pac. 367].) It would follow that the position of the defendant regarding the abiding place of the burden in such instances is unsound. But, conceding that the burden was on the People to prove that Haw did not accept the check with the understanding that he was not to present the check for payment until October 10, 1926, for the reason that the defendant would not until then have sufficient funds in the bank to meet it, the fact is, assuming that it was post-dated as claimed by the defendant, that the check, which was introduced in evidence by the People, was itself some evidence that Haw accepted it with such an understanding—indeed, evidence which might be sufficient to sustain a finding to that effect unless it was controverted by other credible and more persuasive or convincing evidence. The court instructed the jury that if the defendant delivered the check to Haw with knowledge by him (defendant) at the time of such delivery that he had no funds in or credit with the bank upon which it was drawn to meet it in full on presentation, "then in such case it is immaterial whether *you regard* said Haw check as dated either in 1925 or 1926, or with no certain date, for section 476a, Penal Code, covers checks or drafts either antedated or postdated or not dated, *provided, however, such check or draft is taken by the defrauded taker without information given him that the drawer had* no funds or credit." The plain converse of the proposition stated by the italicized portion of the language of said instruction is (and the jury must so have understood it) that if Haw took the check with information that the defendant, at the time of the delivery of the check, had no funds in or credit with the bank to meet the check on its presentation for payment on the date of its delivery or any subsequent time within one year from its delivery, the charge against the accused could not be sustained. Thus the question whether Haw accepted the check with information that it was not to be presented for payment until October 10, 1926, was fairly and intelligibly put before the jury upon some

evidence (the check itself, assuming that it was postdated as claimed), and it is, therefore, necessarily to be implied from the verdict that the jury considered that proposition and that their conclusion was that the check was not postdated and that Haw received no information from the defendant, at the time the check was delivered to him (Haw), that the check was not to be presented for payment until a year from the date of its delivery. And the court, by the same instruction, submitted to the jury the question whether the check was or was not postdated, in the following language of the instruction: " . . . then, in such case, it is immaterial whether *you regard* (find) said Haw check as dated either in 1925 or 1926," etc. Of course, it must be understood that the court by the statement that "it is immaterial" whether the check was dated in "1925 or 1926" was referring to the offense itself as defined by section 476a—that is, that the date of the check was not an element or ingredient of the crime itself. And accepting the decision in the cases of *People* v. *Freeman, supra,* and *People* v. *Arras,* 89 Cal. 223, 226, 227 [26 Pac. 766], as laying down a sound rule as to variances between the pleadings and proof in criminal cases, the variance in the instant case, if there be a variance, in the legal concept of that term, is immaterial, since, as we have before stated, the evidence leaves no room for doubt that the check which the information alleges that the defendant delivered to Haw is the identical check that was introduced in evidence by the People to support the charge, and, therefore, we may repeat, the defendant could suffer no embarrassment in supporting the pleas of former conviction and once in jeopardy should any attempt be made hereafter to prosecute him for and convict him of the offense of which he is here accused. In the case of *People* v. *Edwards,* 59 Cal. 360, the defendant was charged with the crime of burglary and the information alleged that he entered a building "known as the store of one S. Loupe," etc. The evidence showed that the store was owned and belonged to "S. Loupe, L. Loupe and A. Haas, partners doing business" in said building and store, but which was known as "Loupe's store." The supreme court upon the plea on appeal that there arose a material variance between the information and the proof in that case, held the variance to be immaterial.

 The charge of the court contained a fair statement
of the law and in language so clear that the jury could not
have been led into any misapprehension as to the issues
which the nature of the case required them to consider and
decide. It would, of course, have been well if some of the
instructions proposed by the defendant and rejected by the
court had been given, since, upon certain of the issues,
they were more specific and direct than those by the court
upon the same questions. But for that reason alone there
should not be a reversal in a criminal case where, as here,
the evidence appears to be so conclusive of the defendant's
guilt as to amount almost to demonstration.

The judgment and the order are affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by
the district court of appeal on January 11, 1929, and the
following opinion then rendered thereon:

HART, J.—The petition for a rehearing of this cause will
be denied for reasons hereinafter to be stated.

The petition merely involves a repetition of the argument
advanced in the briefs of counsel for the defendant in sup-
port of the points herein made. After a careful considera-
tion of the petition, we have found no reason for departing
from the conclusion announced in our original opinion upon
said points. We deem it proper, however, to give further
notice to the point that the trial court committed prejudicial
error by allowing the witness Irish (the cashier of the bank
upon which the check in question was drawn) to testify
that the defendant, neither at the time the check was drawn
nor at any other time thereafter during said witness' official
connection with said bank, had any funds in or credit with
the bank to meet said check upon its presentation for pay-
ment. In the petition it is said that the case of *People*
v. *Kawano,* 38 Cal. App. 613 [177 Pac. 174], cited in our
original opinion as holding that the testimony of a bank
officer actively connected with the bank in the management
of its business that a party has no funds in or credit with
such bank, is competent or legally proper for the proof of
that fact, is in the facts, so clearly distinguishable from the
instant case that it cannot stand as an authority supporting

the ruling allowing the testimony by the cashier in this case; that the specific distinction between the two cases is this: That, in the Kawano case, the "credit remittance man" of the bank concerned therein was specially charged with the duty of handling all business with "outside California banks"; that he testified that previous to giving his testimony, he had made a personal inspection of the books of the bank with reference to the particular account of Kawano, the defendant in said case, and that the latter had no account or credit with said bank at the time he drew the check involved in that case; whereas, so it is, in effect, declared by the accused here, the cashier did not testify nor was it shown that he had inspected the books of the bank or made any special investigation with reference to the defendant to ascertain whether he had any funds in or credit with the bank at the time the check was drawn or at any time thereafter to meet the same upon its presentation for payment. While this is all true, Irish did testify that he had been cashier of the Placerville National Bank from and including the day upon which the check was drawn continuously to the date of the trial in June, 1928; that he had no acquaintance whatever with the defendant during the period of time that he had been cashier of said bank, and, in fact, had never seen him until the day upon which he (defendant) was given his preliminary hearing on the charge upon which the information is founded; that he (the cashier) was "fairly" familiar with all of the books of the bank, and that the defendant had no account or credit with said bank at any time during his connection therewith as cashier. The irresistible inference from Irish's testimony, viewed in its entirety, is that he was sufficiently familiar with all of the books of the bank and the business thereof to justify him in declaring, as unequivocally and unqualifiedly he did declare, that the accused never at any time had any funds in or credit with said bank during Irish's occupancy of the office of cashier. The only real difference between the Kawano case and this as to the present consideration is that, while the "credit remittance man" in the case first named gained his knowledge of the fact that Kawano had no funds in or credit with the bank therein concerned from an inspection of the books, in the instant case the cashier acquired his knowledge of the same fact as to the defendant from his general familiarity with the books of the bank and

his intimate familiarity with the business of that institution, and from the further fact that he had never known the accused and never had seen him until a brief time before the date of the trial of this case. We can see no substantial difference between the situation in the Kawano case and the situation in the present case regarding the matter in hand. It cannot be said that the cashier in this case any the less acquired his knowledge of the fact that the defendant had no funds in or credit with the bank of which he was cashier from his own perception than that the "credit remittance man" in the Kawano case thus acquired his knowledge with reference to the same fact regarding Kawano. But regardless of this latter consideration, we still adhere to the view expressed in the original opinion that this is an instance which comes within the provisions of section 1855, subdivision (5), of the Code of Civil Procedure.

There is, as to the facts, no analogy between the case of *People* v. *Frey*, 165 Cal. 140, 144 [131 Pac. 127] (cited by defendant), and this case. There the only evidence offered and received in support of the charge that the defendant, drawer of the check, had no funds in the bank upon which the check was drawn, was a notation in writing across the face of the check as follows: "No account." The opinion in that case stated that "there was no testimony on the part of anyone connected with the bank that the words 'no account' on the face of the check were written by any person connected with the banking corporation in Nevada, or by anyone who knew or could know the facts," and held, therefore, that no case was made against the accused. Clearly, as we have already substantially stated, the Frey case is far from being such a case as we have here.

The petition for rehearing is denied.

Plummer, J., and Finch, P. J., concurred.