THE PEOPLE, Respondent, v. CHARLES J. McNICHOL,
Appellant.

Winters & Winters and Robert K. Winters for Appellant.

Fred N. Howser, Attorney General, and Gail A. Strader, Deputy Attorney General, for Respondent.

ADAMS, P. J.—This appellant was charged with and convicted of the making and uttering of a check drawn upon a bank in which he had no account, in violation of section 476a of the Penal Code. The evidence shows that defendant, a resident of Connecticut, went to Oakland to visit a sister. There, without eating any breakfast on February 10, 1950, he consumed a pint of whiskey and four cans of beer, after which his sister and her husband took him to the highway and left him there to "hitch-hike" his way to Connecticut. In Vallejo, about 4:30 in the afternoon, he went to the drugstore of a Mr. Manfredi, where he represented himself as a doctor living in Vallejo, and presented a check drawn on the Bank of America for $35, signed "Charles J. McNichol, M.D." He bought two cartons of cigarettes and some cough medicine, received the balance in change and departed. Becoming suspicious, and being informed on inquiry that there was no such doctor in the town, Mr. Manfredi called the police department and also the Bank of America. The following day he took the check to the bank, where they advised him that they had no such depositor.

On the same day, defendant tendered to a Mr. Berry at a photographer's studio a check for $35 to pay a $10 deposit on a photograph, but departed before the transaction was completed. The proprietor testified that defendant had been drinking, but that he walked and talked all right. Mr. Stoddard, an officer of the Vallejo Police Department, testified that about 12:30 a. m. of February 11, 1950, he encountered defendant in a bar in Vallejo, where the bartender requested the witness to take defendant away as he was drunk and making a nuisance of himself; and that he escorted defendant to a hotel and put him to bed. On reporting for duty about 7 a. m. Mr. Stoddard read reports made by Mr. Manfredi and Mr. Berry, whereupon he went to the hotel and arrested defendant who was then sober. Defendant said he had passed three checks, one at a drugstore and another at a photographer's, but could not remember where the third was passed.

At the trial defendant testified that the morning of the day when the check was cashed, he had consumed a pint of whiskey and four cans of beer, and that he had no recollection of what his conduct was at the time the alleged offense was committed, nor until he was awakened in a hotel the following morning and placed under arrest. He also testified that he had been drinking to excess for the past 11 years, and that previously he had been charged with issuing worthless checks when he was intoxicated; that he had no recollection of passing checks in Vallejo, and that his memory as to the hours after he was put out on the highway and the time he was awakened in the hotel was "pretty faulty"; that he did not remember whether he passed a check on February 10th. He did not contend that he was insane, but denied it.

Prior to his trial defendant had been examined by a clinical psychologist, a Mr. Singer, who had subjected him to an examination while under the influence of the so-called truth serum, sodium pentathol. During the trial appellant sought to introduce in evidence a report of statements he had made during such examination, but such testimony was excluded. This, he contends, constituted reversible error, first, on the theory of past recollection recorded (Code Civ. Proc., § 2047); second, to show the facts upon which Mr. Singer based his opinion; and, third, that introduction of such evidence should be allowed a defendant in support of his defense.

Section 2047 of the Code of Civil Procedure provides that a witness may refresh his memory respecting a fact by anything written by himself, or under his direction, at the time when the fact occurred or immediately thereafter, or at any time when the fact was fresh in his memory, and he knew that the same was correctly stated in the writing; and that a witness may testify from such a writing though he retain no recollection of the particular facts, but such evidence must be received with caution. Since defendant, at the time of the trial, contended that he had no recollection of the circumstances under which the offense was committed, and claims that this was due to amnesia superinduced by his intoxicated condition, obviously any statements which he may have made under the influence of sodium pentathol were not made when the fact was fresh in his memory, and thereafter forgotten, and perusal of the notes made during the serum test could not have refreshed his memory if he had none. In fact the record shows that defendant had in his possession the record of what he had stated during the period of narcosis, when he testified,

so the conclusion seems irresistible that when the court refused him permission to refer to it near the end of the trial when he was recalled after testifying that he did not remember about passing checks in Vallejo, the memorandum of his statements to Mr. Singer did not refresh his recollection. Nor can it be said that, under the conditions existing when the statements were made, they were made at the time when the fact occurred, or immediately thereafter, or at any time when the facts were fresh in his memory, nor could he say, having no recollection, that the statements so made were correctly stated in the writing. Nor does it appear that had he been permitted to use them they would have revealed that appellant had not committed the crime charged. What defendant expected to show by such notes was not stated. There was adequate testimony that appellant wrote and cashed the check as charged and that it was drawn upon a bank in which he had no funds, and, in fact, in the town of Vallejo in which he was a total stranger; and appellant does not deny these facts. His sole defense, as we see it, is that he was in such a state of intoxication that he was in fact unconscious of his acts when he wrote and cashed the check.

■ It is well established that a state of self-induced intoxication, or unconsciousness during such state, does not excuse a defendant charged with crime committed while so intoxicated. (See *People* v. *Lim Dum Dong,* 26 Cal.App.2d 135, 138 [78 P.2d 1026]; *People* v. *Taylor,* 31 Cal.App.2d 723, 732 [88 P.2d 942]; *People* v. *Anderson,* 87 Cal.App.2d 857, 860 [197 P.2d 839]; *People* v. *Nolan,* 126 Cal.App. 623, 636 [14 P.2d 880]; *People* v. *Sameniego,* 118 Cal.App. 165, 173 [4 P.2d 809, 5 P.2d 653]; *People* v. *Weaver,* 96 Cal.App. 1, 6-7 [274 P. 361]; Pen. Code, § 22; 8 Cal.Jur., § 379, p. 332.) ■ To be sure, where intent is a component part of a crime a jury may consider the condition of a defendant in order to determine whether there was such an intent; but such question is one for the jury to decide (*People* v. *Weaver, supra*), and in the instant case they have decided it against defendant upon sufficient evidence.

It does not appear how if at all defendant was prejudiced by refusal of the trial court to permit defendant to introduce the statements made by him while under the influence of sodium pentathol, and even if such memoranda were admissible, which we do not hold, no reversible error which resulted in a miscarriage of justice was committed. (See Cal. Const., art. VI, § 4½.)

Mr. Singer, in response to hypothetical questions, testified that one who had consumed the quantity of liquor the evidence showed this appellant to have consumed would not be conscious of an intent to do an act to obtain money—that his intent would not be a conscious intent. He also stated that subconscious matter might be brought out by putting the party into an hypnotic state by the administration of sodium pentathol; that he had so treated appellant and that during the treatment notes had been made of what was said by him. But an objection to a statement by the witness of the context of such notes was sustained by the court.

■ As for appellant's argument that what was said by appellant while under the influence of sodium pentathol should have been allowed to show the *facts* upon which Mr. Singer based his opinions, the testimony of that witness was given in response to questions regarding a hypothetical man in the condition of this defendant; and his conclusions were that such man would not have had a conscious intent to defraud. How any statements made by defendant during the imposed hypnotic state would have served to show *facts* upon which he based his replies to the hypothetical questions, or any facts at all, is not made apparent. Evidence was admitted showing appellant's condition, and the questions were apparently addressed to appellant's intent in drawing and uttering the checks, which defendant did not contend or attempt to show he had not written and passed. Defendant's intent was the only matter open to question, and Mr. Singer testified on that subject in response to the questions submitted to him. The instructions given to the jury are not in the record before us, nor is their correctness questioned; so we must assume that the jury under proper instructions passed upon the question of defendant's intent.

■ And as for the argument that the statements made by defendant while in an hypnotic state should in any event be allowed as matter of defense though otherwise inadmissible, even assuming that they would have shown a denial of the making and passing of checks, they would have constituted but hearsay and self-serving declarations, and would not have constituted evidence. See *Estate of De Laveaga,* 165 Cal. 607, 631 [133 P. 307], citing *Estate of Packer,* 164 Cal. 525, 530 [129 P. 778]. In the latter case where certain letters were sought to be disclosed to the jury on the plea that they could be used to refresh the recollection of witnesses, and the trial

court declined to permit them to be read, the Supreme Court said:

"Even if it be assumed that the circumstances were such as to authorize the use of the letters to refresh the witness' recollection (Code Civ. Proc., sec. 2047), the party calling her was not thereby authorized to put the papers before the jury. Such a paper is 'in no sense testimony. . . . The opponent, but not the offering party, has a right to have the jury see it. . . . That the offering party has not the right to treat it as evidence, by reading it or showing it or handing it to the jury, is well established.' (1 Wigmore on Evidence, § 763.) And such seems to be the fair construction of section 2047 of the Code of Civil Procedure, which expressly declares the right of the *adverse party* to read the writing to the jury. (*Reid* v. *Reid,* 73 Cal. 206, 208, [14 P. 781].) To permit this to be done by the party producing the witness would open the door to the admission of hearsay and manufactured evidence without limit."

Also see *People* v. *Creeks,* 141 Cal. 529 [75 P. 101], and cases there cited at page 532.

The judgment is affirmed.

Peek, J., and Van Dyke, J., concurred.

[Crim. No. 2247. Third Dist. Nov. 20, 1950.]